The STATE of Ohio, Appellee,

v.

NICHOLS, Appellant.

[Cite as *State v. Nichols* (1993), 85 Ohio App.3d 65.]

Court of Appeals of Ohio,
Pike County.

No. 485.

Decided Jan. 13, 1993.

66

*Robert N. Rosenberger,* Pike County Prosecuting Attorney, and *Charles R. Junk, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Charles H. Wilson, Jr.,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Pike County Court of Common Pleas, upon a jury verdict, finding Kurt Paul Nichols, defendant below and appellant herein, guilty of gross sexual imposition in violation of R.C. 2907.05(A)(4):[1] The following errors are assigned for our review:

I. "The trial court erred to the prejudice of defendant when it overruled defendant's motion for a mistrial."

II. "The trial court erred to the prejudice of defendant when it refused to instruct the jury on the issue of credibility of a witness, her prior inconsistent statements and her impeachment."

---

1. This appeal is also taken from a judgment overruling appellant's motion for a new trial.

III. "The trial court erred to the prejudice of defendant when it permitted the witness, Phyllis Amlin, to testify as to what the victim had demonstrated to her about the alleged sexual conduct between the victim and defendant."

IV. "The trial court erred to the prejudice of defendant when it sustained the objections of the prosecutor to questions asked by counsel for defendant relative to the motive of the victim in bringing the charge against defendant."

V. "The trial court committed error prejudicial to defendant in the admission into evidence over his objection of other acts by him."

VI. "The verdict and judgment below are against the manifest weight of the evidence."

The record reveals the following facts pertinent to this appeal. On May 19, 1991, Amy J. Jackson (d.o.b. July 14, 1979) (hereinafter referred to as "the minor child") was visiting a Ms. Susan Day, her paternal aunt, when she made certain allegations that she had been sexually abused by her stepfather, the appellant. The sheriff's department was, thereafter, notified and on June 28, 1991, appellant was indicted by the Pike County Grand Jury on one count of rape in violation of R.C. 2907.02(A)(1)(b). Appellant entered a plea of not guilty and the matter proceeded to a jury trial on January 7, 1992.

Although appellant was acquitted on the rape charge, he was found guilty of the lesser included offense of gross sexual imposition.[2] Appellant was, thereafter, sentenced to a two-year definite term of incarceration at the Ohio State Reformatory. On January 14, 1992, appellant filed a motion for new trial arguing that the proceedings below had been tainted by prosecutorial misconduct and that the trial court had erred in (1) failing to grant a mistrial as a result of such misconduct, (2) allowing the state to present certain rebuttal evidence, and (3) failing to give jury instructions on prior inconsistent statements by witnesses. The trial court entered judgment overruling the motion on January 31, 1992, and this appeal followed. Additional facts will be discussed where necessary for resolving a particular assignment of error.

Appellant's first assignment of error is directed at references made by the prosecutor during closing argument concerning "the *last* [s]exual [c]onduct" between the parties. (Emphasis added.) Appellant objected to these statements and moved for a mistrial on the grounds that a reference to "last" sexual conduct tended to suggest that there had been multiple incidents of such conduct even

---

2. The offense of gross sexual imposition under R.C. 2907.05(A)(4) is a lesser included offense of rape under R.C. 2907.02(A)(1)(b). See *State v. Kuntz* (Feb. 27, 1992), Ross App. No. 1691, unreported, at 9, 1992 WL 42774; see, also, *State v. Johnson* (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, at paragraph one of the syllabus (construing former statutes).

though no such evidence had been introduced. The trial court overruled the motion, but gave the following cautionary instruction:

"*JUDGE* : * * * Ladies and gentlemen during the uh, the Prosecutor's argument, he used a phrase, 'Last Sexual Conduct.' I think he used it twice in making his argument. And to the extent that phrase implies or raises an implication of prior Sexual Conduct on behalf of the defendant, it is an improper statement and you are instructed to disregard that statement and any implication that uh, it may give rise to. There has been absolutely no evidence of any prior Sexual Conduct in this case * * * and you [are] instructed that you must disregard that statement or any implication that it may give rise to. You may continue your argument."

These instructions notwithstanding, appellant argues that he was denied a fair trial as a result of the prosecutor's comments and the lower court should have declared the proceedings a mistrial. We disagree. Initially, we note that the granting or denying of a motion for mistrial rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 382, 510 N.E.2d 343, 349. A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected and this determination is, again, in the discretion of the trial court. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. In order to demonstrate an abuse of discretion on these matters, a criminal appellant must be able to show that the trial court's decision was arbitrary, unreasonable or unconscionable. See *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172, 404 N.E.2d 144, 148. We are not persuaded that such a showing has been made in the cause *sub judice*.

The state correctly argues that the sole offending conduct by the prosecutor was the inclusion of the word "last" in two separate places during closing argument. Although the use of this word was clearly improper under the circumstances of this case, it is less apparent that its use adversely affected a substantial right or deprived appellant of a fair trial. The trial court gave a cautionary instruction which mandated that the jury disregard the comments and that there was no evidence of any prior sexual contact between appellant and the minor child. For purposes of mistrial analysis, we note that there is a presumption as to the efficacy of curative instructions with respect to improper comments by witnesses, see *State v. Warren* (1990), 67 Ohio App.3d 789, 799, 588 N.E.2d 905, 912; see, also, *State v. Zuern* (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585, 590, and there is no reason why such a presumption would not also apply to curative instructions given after improper prosecutorial comments. Appellant

cites nothing in the record which would overcome this presumption and we can find nothing to that effect in our own review. It should also be noted that the prosecutor, upon resuming his closing argument, admitted to the jury that his reference to *last* sexual conduct had been a misstatement. Under these circumstances, we discern no abuse of discretion in the refusal to grant a mistrial and the first assignment of error is overruled.[3]

We shall jointly consider the second and third assignments of error as they both revolve around inconsistent statements describing the alleged sexual assault. The minor child testified at trial that, when the incident occurred, appellant was situated behind her. The defense then had a taperecorded statement, by the minor child to the prosecutor, played for the benefit of the jury. During the taped statement, the minor child answered affirmatively in response to a question as to whether appellant had been in front of her at the time of the alleged incident. The state then called a rebuttal witness, Phyllis Amlin, caseworker for Pike County Children's Services, to recount the explanation that the minor child had given to her of the incident and, presumably, to resolve inconsistencies in the child's statements as to appellant's position during the alleged assault.

■ Appellant now argues on appeal that it is improper for a trial court to allow the rehabilitation of a prosecution witness with prior consistent statements given subsequent to any inconsistent statements with which that witness was previously impeached. As an abstract proposition of law, we agree. The introduction of hearsay evidence at trial is generally prohibited. See Evid.R. 802.[4] However, a declarant's prior consistent statements are excluded from the definition of "hearsay" and may be admitted into evidence at trial if (1) the declarant testifies at trial and is subject to cross-examination concerning the

---

3. We do not consider these misstatements during closing argument in the context of prosecutorial misconduct. The error assigned for our consideration is couched in terms of reviewing the trial court's decision on a motion to declare a mistrial and our resolution of the matter remains faithful to that specific issue. Even if we were to consider it, our decision would remain the same. The "touchstone" of analysis in cases of alleged prosecutorial misconduct is fairness of trial and not culpability of the prosecutor. *State v. Richey* (1992), 64 Ohio St.3d 353, 361–362, 595 N.E.2d 915, 923–924. As explained in our decision, we are persuaded that appellant got a fair trial notwithstanding these statements.

4. Hearsay is any statement, other than one made by a declarant at trial, which is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Generally, a statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove its contents. *State v. Williams* (1988), 38 Ohio St.3d 346, 348, 528 N.E.2d 910, 914. However, where evidence is presented to a jury in order to bolster the credibility of witness testimony, the statement is hearsay because it is being offered to prove the truth of the matter asserted (*i.e.*, the testimony of the other witness). *Id.* Although the state argues in the cause *sub judice* that Amlin's testimony was offered solely to "explain the tape recording," we reject this argument as the tenor of the state's questioning makes it obvious that the objective was to bolster the minor child's credibility.

statement, (2) the statement is consistent with her prior testimony, and (3) it is offered to rebut an express or implied charge of recent fabrication. See Evid.R. 801(D)(1)(b).

The courts in Ohio have generally interpreted this rule as including only those prior consistent statements which were made *before* the prior inconsistent statements or *before* the existence of any motive to falsify testimony. See, *e.g.*, *State v. Mullins* (1986), 34 Ohio App.3d 192, 196–197, 517 N.E.2d 945, 950–951; *State v. Smith* (1986), 34 Ohio App.3d 180, 191, 517 N.E.2d 933, 944; *State v. Bock* (1984), 16 Ohio App.3d 146, 148, 16 OBR 154, 155, 474 N.E.2d 1228, 1230. In applying this standard to the cause *sub judice*, we agree with appellant that any rehabilitative testimony given by Amlin does not escape classification as "hearsay" under Evid.R. 801(D)(1)(b). The transcript reveals that the inconsistent taperecorded statement by the minor child was given on September 20, 1991, whereas the interview with Amlin was conducted the following November. Thus, any consistent statements made to that witness occurred after, not before, the prior inconsistent statements used to impeach the child's testimony. The testimony of this witness could not be classified as "non-hearsay" under Evid.R. 801(D)(1)(b) and should have been excluded from evidence pursuant to Evid.R. 802.[5]

We are, nevertheless, not persuaded that the error in allowing such testimony mandates a reversal of the judgment. To begin, it is not immediately apparent to

---

5. We acknowledge the existence of several distinct lines of case law, from jurisdictions with similar evidentiary rules, which have allowed such statements into evidence. For instance, a number of courts have declared that there is, in fact, no absolute requirement that the prior consistent statement be made prior to the inconsistent statements or the alleged motive to fabricate. See, *e.g.*, *United States v. Parry* (C.A.5, 1981), 649 F.2d 292, 296; *United States v. Scholle* (C.A.8, 1977), 553 F.2d 1109, 1122; *State v. Lucero* (App.1989), 109 N.M. 298, 303, 784 P.2d 1041, 1046; *State v. Johnson* (1989), 235 N.J.Super. 547, 556, 563 A.2d 851, 856; *People v. Andrews* (Colo.App.1986), 729 P.2d 997, 999; *Commonwealth v. Poor* (1984), 18 Mass.App. 490, 493, 467 N.E.2d 877, 880. A number of federal courts have even gone so far as to hold that prior consistent statements may be admissible for distinct rehabilitative purposes even if not admissible under the strictures of Fed.R.Evid. 801(d)(1)(B). See *United States v. Brennan* (C.A.2, 1986), 798 F.2d 581, 587–588; *United States v. Harris* (C.A.7, 1985), 761 F.2d 394, 399; see, also, *United States v. Bolick* (C.A.4, 1990), 917 F.2d 135, 138 (though not squarely embracing the position, the court discusses it with approval); but, see, *United States v. Miller* (C.A.9, 1989), 874 F.2d 1255, 1272–1273 (rejecting this position in the Ninth Circuit). This argument has also gained some limited success in state courts. See, *e.g.*, *State v. Bruggeman* (App.1989), 161 Ariz. 508, 510, 779 P.2d 823, 825; but, see, *Campbell v. State* (Tex.App.1986), 718 S.W.2d 712, 716 (rejecting such an approach under Texas law). Our research has uncovered no decision by an Ohio court where either of these two lines of reasoning has been used. Therefore, we adhere to established evidentiary principles which require that the prior consistent remarks be made before the inconsistent remarks, or before the existence of any motive to falsify testimony, if they are to be admitted at trial to rehabilitate the declarant.

us that Amlin's testimony even had a rehabilitative effect on the minor child's account of the incident. The substance of her testimony was as follows:

"Q) Phyllis, would you * * *. Going back I think the original question was, could you demonstrate * * *. First of all, answer yes or no, could you demonstrate as to uh, the way that Amy showed you how these dolls were utilized?

"A) I can.

"Q) Okay. Would you do so, please?

"A) Okay, this is the little girl doll and they don't have bendable joints is the only thing. This is the adult male and as far as the positioning to where Amy was and where she says that Kurt was * * *.

" * * * *

"Q) Let's not talk in terms * * *.

"A) Okay.

"Q) Did she demonstrate to you in the manner in which that was done?

"A) Yes.

"Q) Okay. Is that generally, the manner in which she showed you?

"A) Yes, keeping in mind that the knees do not bend on these dolls.

"A) Okay."

Although the demonstration may have been perfectly clear to anyone observing the witness, it is far less obvious to those of us who must rely on the written transcript for understanding the proceeding below. The witness did not *verbally indicate* whether the male doll was in front of, or behind, the little girl doll during the demonstration. It should go without saying that such information must be expressly stated into the record if it is to be considered by an appellate court. As it stands now, we cannot determine whether Amlin's testimony actually rehabilitated that of the minor child or whether it further corroborated the inconsistencies revealed by the prior taped statement. Absent actual contradiction with the impeachment evidence offered by the defense, there would be an insufficient showing of prejudice to sustain a reversal on this issue even if error had intervened when that testimony was introduced. See Whiteside, Ohio Appellate Practice (1991) 72, Section T 7.03 (the provisions of Crim.R. 52 require a reviewing court to disregard non-prejudicial error).

Assuming *arguendo* that Amlin's testimony did, in fact, rehabilitate the account given by the minor child, then we are persuaded that the error was harmless. A judicial error may be deemed harmless if we are able to determine that it was harmless beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 282–283, 574 N.E.2d 492, 509–510; *State v. Moreland* (1990), 50

Ohio St.3d 58, 64, 552 N.E.2d 894, 900; *State v. Williams* (1983), 6 Ohio St.3d 281, 286, 6 OBR 345, 349, 452 N.E.2d 1323, 1329; see, also, *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710.[6] The evidence uncovered in our review of the record satisfies this inquiry. The minor child gave a detailed account of the alleged assault and was subjected to a thorough cross-examination which included references to the prior inconsistent description of the incident on the taped statement.[7] The child's aunt also testified as to the emotional trauma experienced by the minor child when the allegations against appellant were made known. Moreover, the child's testimony, the taperecorded statement and the rehabilitation testimony of Amlin were *all consistent* on the issue of whether the sexual assault took place. The only discrepancy between accounts given by the victim of this alleged incident is the precise location of appellant at the time it took place. All things considered, we hold that the admission of Amlin's testimony was harmless beyond a reasonable doubt.

■ Appellant also contends that the trial court erred in failing to give requested jury instructions concerning the minor child's prior inconsistent statement. We disagree. Although the transcript reveals that appellant made a general verbal request for some sort of instruction on this issue, there is no indication that he was requesting any specific instruction and the record does not reveal that he ever submitted proposed written instructions as provided for under Crim.R. 30(A). The law specifies that a request for jury instructions under the Criminal Rules is to be in writing. *State v. Franklin* (1991), 62 Ohio St.3d 118, 128, 580 N.E.2d 1, 9; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583, at paragraph two of the syllabus. A failure to submit proposed

6. There is a distinction to be drawn between the concepts of constitutional harmless error and nonconstitutional harmless error. See, generally, *State v. Davis* (1975), 44 Ohio App.2d 335, 346–348, 73 O.O.2d 395, 401–402, 338 N.E.2d 793, 802–803; see, also, *State v. Evans* (1981), 96 Wash.2d 1, 5, 633 P.2d 83, 86 (Brachtenbach, C.J., concurring). However, the distinction between these two concepts is lost on most courts. *Davis, supra,* 44 Ohio App.2d at 348, 73 O.O.2d at 402, 338 N.E.2d at 803. Although a number of courts have determined that erroneous evidentiary rulings do not ordinarily rise to the level of constitutional error, see, *e.g., State v. Tharp* (1981), 96 Wash.2d 591, 598–599, 637 P.2d 961, 965; *Busch v. State* (Fla.App.1984), 466 So.2d 1075, 1079, the Ohio Supreme Court has applied the constitutional harmless error standard in reviewing the erroneous admission of hearsay evidence. See, *e.g., State v. Self* (1990), 56 Ohio St.3d 73, 82, 564 N.E.2d 446, 454; *State v. Kidder* (1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311, 316. Accordingly, we do the same.

7. In a number of cases, the minor child's testimony alone was deemed sufficient to determine that the erroneous admission of hearsay evidence in a sexual assault case was harmless error. See *People v. Foreman* (1989), 179 Mich.App. 678, 680, 446 N.W.2d 534, 535; *People v. Serna* (Colo.App.1987), 738 P.2d 802, 804; see, also, *People v. Leamons* (1984), 127 Ill.App.3d 1056, 1068, 83 Ill.Dec. 203, 212, 469 N.E.2d 1137, 1146 (the erroneous introduction of corroborative hearsay statements by a sexual assault complainant is harmless error where the complainant himself testifies and is subject to cross-examination).

written jury instructions would generally constitute a waiver of any error in the absence of such a charge to the jury.

The Ohio Supreme Court has carved out an exception to this rule and held that when the trial court fails to give a complete instruction on the elements of the offense charged, or any defense thereto, the error is preserved for appeal irrespective of whether there has been a proffer of written jury instructions. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279, at paragraph three of the syllabus. The court reasoned that "[a] criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence [and] * * * it is not realistic to expect counsel to anticipate errors of omission. * * *" *Id.* at 251–252, 551 N.E.2d at 1283. However, in the cause *sub judice*, the defense presented the evidence of the contradictory taped statement and should, therefore, have anticipated its own need for an instruction on this issue. It also bears mentioning that witness credibility in this context is neither an element of the offense of rape nor a defense thereto. Accordingly, we hold that appellant waived any error on the refusal to give such a charge to the jury by failing to proffer a written instruction to the court pursuant to Crim.R. 30(A).[8] For these reasons, the second and third assignments of error are overruled.

We now turn to appellant's fourth assignment of error wherein he argues that the trial court erred in not permitting him to elicit testimony directed at the credibility of the minor child's accusations. Appellant contends that such evidence was highly relevant and "sought to explain why [the minor child] would invent the story." Thus, appellant concludes, the court committed reversible error in excluding such testimony. We disagree.

The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Combs* (1991), 62 Ohio St.3d 278, 284, 581 N.E.2d 1071, 1077; *State v. Jells* (1990), 53 Ohio St.3d 22, 30, 559 N.E.2d 464, 472; *State*

---

8. Although the record does not indicate that appellant ever requested any specific instruction from the trial court, he now contends on appeal that he was seeking either, or both, of the following instructions from 1 Ohio Jury Instructions (1989) 149, Sections 5.31(1) and (2):

"5.31 Depositions, transcripts and interrogatories

"1. TESTIMONY. Some testimony was presented by a (deposition) (transcript of testimony) (video tape) (audio tape). This evidence is to be considered according to the same tests that are applied to other witnesses.

"2. USED FOR IMPEACHMENT OR CREDIBILITY. If statements in a (deposition) (other device) differ from the testimony given by the same witness in the court room, you may consider them to test the (credibility) (believability) of such witness."

This instruction is directed at contradictory evidence taken from deposition testimony. The taperecorded statement by the minor child in the cause *sub judice* was not a deposition and there is no indication that her testimony therein was even sworn. Thus, it would have been improper to give those instructions cited by appellant in his brief.

*v. Lyles* (1989), 42 Ohio St.3d 98, 99, 537 N.E.2d 221, 221. Because of the broad discretion of the trial court, we cannot reverse on appeal unless the court so abused its discretion that prejudicial error intervened. *State v. Graham* (1979), 58 Ohio St.2d 350, 352, 12 O.O.3d 317, 318, 390 N.E.2d 805, 806. An abuse of discretion, as mentioned previously, is indicated by a decision which is arbitrary, unreasonable or unconscionable. *Xie, supra,* 62 Ohio St.3d at 527, 584 N.E.2d at 719; *Moreland, supra,* 50 Ohio St.3d at 61, 552 N.E.2d at 898. Appellant offers no argument that the lower court abused its discretion on this issue and, in our own review of the record, we are unable to make such a determination. The fourth assignment of error is, accordingly, overruled.

In his fifth assignment of error, appellant directs our attention to several places in the record where he contends the state was permitted to elicit testimony, over objection, in violation of Evid.R. 404(B).[9] This testimony alludes to appellant's prior drinking, meanness to his wife and the kids and his return to the marital residence after having been directed not to do so by children's services. Appellant provides only a cursory discussion of this testimony and fails to persuade us that its admission into evidence was error.

All relevant evidence is admissible. Evid.R. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more, or less, probable than it would be without the evidence. Evid.R. 401. In the cause *sub judice,* the defense called Lisa Nichols, the minor child's mother, to testify to the effect that she believed her husband was innocent and that she, her husband and the children enjoyed a happy home life. The witness's testimony was clearly intended to challenge her daughter's credibility. During cross-examination, and during examination of appellant, the state sought to introduce rebuttal testimony. This evidence was clearly relevant to determining the credibility of the mother and the minor child as well as determining the veracity of the accusations.

To be sure, evidence of other crimes, wrongs or acts is still inadmissible to prove the character of a person in order to show that he acted in conformity therewith. Evid.R. 404(B). The gist of the rule is that "[e]vidence of other crimes, wrongs or acts of the accused is not admissible to show that the accused committed the crime with which he is now charged." See Staff Note in Giannelli, Ohio Evidence Manual (1991) 29, Evid.R. 404. The testimony to which appellant objects in his brief is entirely unrelated to the crime of rape and clearly was not

---

9. Appellant's brief actually cites "Evidence Rule 4(b)," which, presumably, was meant to denote Evid.R. 404(B). The provisions of this rule state, *inter alia,* that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

introduced to show that the alleged crime was committed in conformity with some character trait for drinking, meanness, etc. Accordingly, we find no merit in the argument and the assignment of error is overruled.

■ In his final assignment of error, appellant contends that the minor child's accusations are unsubstantiated by other evidence and that her testimony was, effectively, impeached. Thus, appellant concludes, the jury verdict and the judgment were against the manifest weight of the evidence. Again, we disagree.

In reviewing a claim that a jury verdict was against the manifest weight of the evidence, a reviewing court's duty is to review the record and determine whether there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph four of the syllabus. This standard was met in the cause *sub judice*. The minor child testified at trial and gave a detailed explanation of the alleged incident. If found credible, this testimony was sufficient for a jury to have found appellant guilty beyond a reasonable doubt.

Appellant counterargues that there is no independent corroborative evidence to support the minor child's accusation. That fact is irrelevant. This court, and others, have firmly held that there is nothing in the law which requires that a rape victim's testimony be corroborated as a condition precedent to conviction. See *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854, 863; see, also, *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88, 89; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346, 349. This same principle would apply to convictions on the lesser included offense of gross sexual imposition. Thus, there is no need for further corroborative evidence.

Appellant also contends that the events related by the minor child were "remarkable" and that her testimony was impeached. We are not persuaded. There was, to be sure, sufficient evidence introduced below to challenge the minor child's credibility. However, the jury is free to believe all, part, or none of the testimony of each witness who appears before it. *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1147; see, also, *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096, 1104. It goes without saying that the jury below was in a much better position than this court to view the witnesses and observe their demeanor, gestures and voice inflections and to weigh their credibility. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. Thus, the weight of the evidence and witness credibility remain as issues for the trier of fact. *State v. Rojas* (1992), 64 Ohio St.3d 131, 139, 592 N.E.2d 1376, 1384; *State v. Tyler* (1990), 50 Ohio St.3d 24, 32, 553 N.E.2d 576, 587; *State v. DeHass* (1968), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. We will not second-guess the jury as to the particular assessment of weight and credibility afforded to the

testimony of each witness. Accordingly, the sixth assignment of error is over-ruled.

Having considered all errors assigned and argued herein, and finding the same to be without merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, J., concurs.

HARSHA, J., concurs separately.

HARSHA, Judge, concurring.

I respectfully disagree with the principal opinion's conclusion that only prior consistent statements made *before* the inconsistent statement (impeaching statement) may be used to rehabilitate the witness. In doing so, I must confess to adopting the minority view on this issue.

The fact that a witness has made a prior statement that is inconsistent with her trial testimony suggests that the witness's present testimony is the product of either a faulty memory or a conscious effort to mislead the jury. The majority view, expressed by the principal opinion, holds that it then becomes relevant to show that the witness made a consistent statement *before* the witness's memory purportedly failed, or before a motive to fabricate arose. It is interesting to note that in this case any motive to fabricate would have to have arisen prior to the victim's giving any statement at all, consistent or otherwise. In other words, her motive to lie occurred prior to alleging the rape, rather than after having given an initial statement. Thus, the timing requirement does not seem appropriate here.

Nonetheless, I believe that once the credibility of the witness has been impeached by introduction of a prior inconsistent statement, a prior consistent statement may be introduced to bolster the credibility of the trial testimony, regardless of whether the bolstering statement was made before or after the inconsistent statement. See *United States v. Scholle* (C.A.8, 1977), 553 F.2d 1109, 1121–1122; *United States v. Rios* (C.A.10, 1979), 611 F.2d 1335, 1349, and the cases cited at fn. 5 of the principal opinion. Where the prior consistent statement tends to rehabilitate the witness's trial testimony, it should be admitted. Witnesses are always subject to cross-examination by references to discrepancies between their current trial testimony and parts of previous statements. It should be up to the trier of fact to determine whether the inconsistencies are such as to destroy the witness's credibility. As one commentator has stated:

"Of course, some prior consistent statements have minimal probative value. For example, a statement made by a party to the party's lawyer shortly before trial, consistent with the party's testimony at trial, would fall into this category.

"The most sensible thing the courts could do would be to treat a prior consistent statement like any other circumstantial evidence, the admissibility of which depends upon its relevance. The trial judge should have substantial discretion to weigh its probative value, if any, against the danger of confusion of issues, waste of time, needless presentation of cumulative evidence, and other factors listed in Fed.R.Evid. 403. The trial judge should not be strait-jacketed by arbitrary rules dealing with whether, when, or how the credibility of a witness was impeached, or the time when a motive to fabricate arose, if indeed it did arise, or whether the consistent statement was made before, or after, or contemporaneously with, a prior inconsistent statement." Binder, Hearsay Handbook (3 Ed.), Section 2.12, at 79.

Because I believe evidence of the victim's prior consistent evidence was properly admitted, there is no need to conduct either a harmless error or waiver analysis.

Concerning the fourth assignment of error, both the defendant and his wife repeatedly answered on both direct and cross-examination that they had no idea why the victim would lie about the incident. In short, counsel for appellant was able to inquire about the motive for lying but did not receive responses which were beneficial to his defense. See the record at 89–89, 99, 103, 113, 128, 134.

With the above-noted exceptions, I therefore concur in judgment and opinion.