OPINION
Defendant-appellant Pierre Colquitt appeals from his conviction and sentence for Possession of Drugs and Tampering with Evidence. Colquitt argues that the trial court erred by not declaring a mistrial upon learning that one of the jurors had not been sworn in prior to voir dire and a jury view. Colquitt also asserts that there is insufficient evidence to support his convictions on the charges, and that his convictions are against the manifest weight of the evidence. Colquitt further contends that the trial court erred by not giving the jury an instruction on the lesser included offense of Attempted Tampering with Evidence, and by not removing the word "concealment" from the jury instructions regarding the Tampering with Evidence charge.
We conclude that the trial court did not abuse its discretion in refusing to declare a mistrial upon learning that one of the jurors had not been sworn in prior to voir dire, because the trial court had the juror affirm the truthfulness of her responses during voir dire, and gave defense counsel an opportunity to engage the juror in further inquiry if he so desired. We also conclude that Colquitt's convictions on the charges are supported by sufficient evidence, and are not against the manifest weight of the evidence. We further conclude that the trial court did not err by refusing to instruct the jury on the lesser included offense of Attempted Tampering with Evidence, since Colquitt's act of concealing or removing evidence was complete when Colquitt threw the evidence in question (a plastic baggie containing crack cocaine) over a fence and into a yard. Finally, the trial court did not err in refusing to remove the word "concealment" from its instruction regarding the Tampering with Evidence charge, since the jury could have reasonably found that Colquitt's actions fell within the common definition of "conceal." Accordingly, the judgment of the trial court is Affirmed.
 I
In January, 1998, Sergeant Brian Radanovich and Detective Joseph Tedeschi of the narcotics unit of the Springfield Police Department were staking out the residence at 120 Catherine Street, looking for an individual named Phillip White, who had been charged with Drug Trafficking in a secret indictment issued by the Clark County Grand Jury. Prior to that time, the police had made undercover purchases of crack cocaine from White at that residence.
During their surveillance of the residence, the officers saw a man, who was later identified as Colquitt, walk up to the rear entrance of the residence at 120 Catherine Street, at approximately 10:15 p.m. Thinking that the man might be Phillip White, the officers walked up to Colquitt and said, "hold up a minute." At that point, Colquitt turned towards the officers, and appearing nervous, started walking towards a nearby garage. When he got to the corner of the garage, at the fence line, Colquitt made a throwing motion. Tedeschi saw an object come from Colquitt's hand, which appeared to be a plastic baggie. Colquitt walked around the van, and down the alley, where he was met by Radanovich. When Tedeschi went to handcuff Colquitt, Tedeschi told Radanovich that the suspect had "threw it in the yard." Colquitt yelled that it "was not his dope," even though Tedeschi had not specified what object it was that Colquitt had thrown. Colquitt "yelled" that "it was not his dope," two or three times, "in the manner of letting the people in the house know" that the police were outside. Once he finished handcuffing Colquitt, Tedeschi retrieved the baggie. A subsequent analysis of the substance inside the baggie revealed that it was more than ten grams of crack cocaine, worth an estimated $1,000 to $1,100.
Colquitt was indicted for Possession of Crack Cocaine in excess of ten grams, pursuant to R.C. 2925.11, and for Tampering with Evidence, in violation of R.C. 2921.12. Following a jury trial, Colquitt was convicted on both counts and was sentenced accordingly.
Colquitt appeals from his conviction and sentence.
 II
Colquitt's First Assignment of Error states:
 THE [TRIAL] COURT COMMITTED PREJUDICIAL ERROR BY NOT ADMINISTERING AN OATH TO A JUROR UNTIL AFTER THE VOIR DIRE AND JURY VIEW HAD ALREADY OCCURRED.
After the jury had returned from viewing the crime scene, defense counsel informed the trial court that at least one juror might not have been sworn in prior to voir dire, as required under R.C. 2945.27. Defense counsel requested that the trial court declare a mistrial. The trial court denied the motion, finding that the defense had not raised the issue in a timely manner, and that it did not appear that the defense had been prejudiced by the error. To confirm that the defense had not been prejudiced, the trial court asked the jury if any one of them had not been sworn in prior to voir dire. Only one juror, Gloria Chenault, stated that she had not been.[1] The trial court administered the oath to Chenault, and asked her if she remembered the questions that she had been asked during the jury selection process. Chenault replied, "[y]es, some of them." The trial court asked Chenault if her answers were truthful, and Chenault answered in the affirmative. When the trial court asked defense counsel if he wished to inquire any further, he answered, "no."
Colquitt essentially argues that the trial court erred by not declaring a mistrial upon learning that one of the jurors had not been sworn in prior to voir dire. Colquitt points to Chenault's acknowledgment that she only remembered some of the questions asked of her as proof that he was prejudiced by the trial court's failure to swear her in prior to voir dire. Colquitt argues that Chenault could not affirm the truthfulness of her answers if she could not remember the questions asked of her.
Mistrials need be declared only when the ends of justice so require, and a fair trial is no longer possible. State v. Garner
(1995), 74 Ohio St.3d 49, 59. The decision whether to grant a mistrial lies within the trial court's sound discretion. Id. In order to demonstrate that the trial court has abused its discretion in refusing to grant a mistrial, a criminal appellant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable. State v. Nichols (1993),85 Ohio App.3d 65, 69.
Here, the trial court did not abuse its discretion in refusing the defense's request for a mistrial. The trial court's decision to ask Chenault to affirm the truthfulness of her answers during voir dire, and to allow defense counsel to inquire further, was an appropriate remedy for the procedural irregularity that had occurred. If defense counsel was concerned about Chenault's failure to remember all of the questions that had been asked of her during voir dire, he could have accepted the trial court's open-ended invitation to inquire further concerning any subject or subjects of particular interest to him. There is nothing in the record to suggest that the trial court would have prevented Colquitt from inquiring, at that point, concerning Chenault's qualifications as a juror. Had an inquiry produced any new information, Colquitt might even have persuaded the trial court to have permitted a belated peremptory challenge to Chenault under these unusual circumstances.
Because Colquitt failed to accept the trial court's invitation to inquire further, he may not now be heard to complain. The record fails to demonstrate that the trial court, in its handling of the problem with juror Chenault, deprived Colquitt of an opportunity for a fair trial.
Moreover, defense counsel had a legitimate, tactical reason for not raising any further objection to Chenault's presence on the jury. Earlier in the proceedings, defense counsel objected to the composition of the jury on the ground that it contained no blacks.[2] For reasons that are unclear from the record, Chenault was not present in the courtroom at that moment. When Chenault returned to the courtroom shortly thereafter, the trial court noted for the record that Chenault was black. Thus, defense counsel had a legitimate, tactical reason for not raising any further objection to Chenault's presence on the jury. In light of the foregoing, Colquitt was not deprived of a fair trial by the procedural irregularity, and the trial court did not abuse its discretion in overruling his motion for a mistrial.
Colquitt's First Assignment of Error is overruled.
 III
Colquitt's Second Assignment of Error states:
 THE APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE AND WAS [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION.
When considering whether the evidence presented at trial is sufficient to support a conviction, an appellate court must determine whether the evidence, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt, with the evidence presented viewed in a light most favorable to the prosecution. Id.
In considering whether a jury verdict is against the manifest weight of the evidence, a reviewing court must weigh the evidence presented, and consider the credibility of the witnesses, to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
Colquitt asserts that the State failed to prove beyond a reasonable doubt that he "possessed" the crack cocaine, since the area where Tedeschi saw Colquitt make the throwing motion was dimly lit, and the baggie that Tedeschi recovered was found in the yard of crack house, where any number of people could have dropped or left it. We disagree.
R.C. 2925.11(A) provides that, "[n]o person shall knowingly obtain, possess, or use a controlled substance." A defendant "possesses" a controlled substance when he knows of the substance's presence, the substance is immediately accessible, and the defendant has dominion or control over it. Black's LawDictionary (6 Ed. 1991) 1162, cited in Logan v. Cox
(1993), 89 Ohio App.3d 349, 353.
Here, Tedeschi testified that when Colquitt made a throwing motion, he saw an object leave Colquitt's hand that looked like a plastic baggie. At the time, Colquitt was standing near a garage that had a spotlight over it. Tedeschi testified that the plastic baggie was illuminated by the spotlight, and that there was no one else in the area at that time. Colquitt said, "that's not my dope," when Tedeschi told Radanovich that Colquitt had "threw it" in the yard, even though Tedeschi had not yet stated what the "it" was. The jury could reasonably infer from this evidence that Colquitt possessed the baggie of crack cocaine, since it demonstrated that Colquitt knew that the substance was present, had immediate access to it, and exercised dominion or control over it by throwing it away. Furthermore, the jury was entitled to reject the explanation proffered by defense counsel that someone at the crack house had left the baggie of crack cocaine, worth $1,000 to $1,100, in the yard. Thus, there was ample evidence presented to support Colquitt's conviction for Possession of Crack Cocaine, and the jury's verdict on that charge is not against the manifest weight of the evidence.
Colquitt also asserts that there is no evidence that he knew that an official proceeding or investigation was in progress, or was about to be or likely to be instituted, because Tedeschi and Radanovich did not identify themselves as police officers. Colquitt also asserts that tossing the baggie into the yard did not constitute concealment of evidence. Again, we disagree.
R.C. 2921.12(A) provides in relevant part that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." "Conceal" is defined as "to prevent disclosure or recognition of," and "to place out of sight." Merriam Webster's Collegiate Dictionary (10 Ed. 1997) 238. "Remove" is defined as, among other things, "to get rid of." Id. at 990.
Here, when Colquitt saw the officers, he began to look nervous, and started to walk away. Radanovich testified that his badge, which he wore on a necklace, was out. Furthermore, Colquitt was keenly aware of the possible presence of the police: Colquitt had a police scanner in his car that was turned on, and tuned into Springfield Police Channel 1. Additionally, Colquitt threw away a baggie of cocaine worth $1,000 to $1,100. Under these circumstances, the jury could reasonably infer that Colquitt knew that an official investigation was underway or was likely to be commenced.
Furthermore, Tedeschi's testimony that Colquitt threw the baggie over the fence and into the yard was sufficient to prove the element of concealing or removing the evidence. The jury could reasonably infer that, by throwing the baggie over the fence, Colquitt was seeking to prevent the baggie's disclosure by placing it out of sight, or getting rid of it. The fact that Colquitt's concealment or removal of the baggie was ultimately unsuccessful does not demonstrate a failure of proof on that element. See State v. Blanchard (Mar. 29, 1996), Clark App. No. 95-CA-0032, unreported. In light of the foregoing, there is sufficient evidence in this record to support Colquitt's conviction for Tampering with Evidence, and the jury's verdict on that charge is not against the manifest weight of the evidence.
Colquitt's Second Assignment of Error is overruled.
 IV
Colquitt's Third Assignment of Error states:
 THE [TRIAL] COURT COMMITTED PREJUDICIAL ERROR BY NOT INCLUDING AN INSTRUCTION FOR A LESSER INCLUDED OFFENSE OF ATTEMPTED TAMPERING WITH EVIDENCE AND BY NOT REMOVING THE DEFINITION OF CONCEALMENT FROM THE DEFINITION OF TAMPERING WITH EVIDENCE.
 If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense. State v. Wilkins (1980), 64 Ohio St.2d 382, 388.
Here, even when the evidence is looked at in the light most favorable to the defense, as it must be, id., the jury could not reasonably have found that Colquitt was guilty merely of Attempted Tampering with Evidence. When Colquitt threw the baggie over the fence, the act of concealing or removing the evidence with the purpose of impairing its value or availability as evidence in an official investigation or proceeding was complete. The fact that Colquitt's concealment or removal of the plastic baggie ultimately did not succeed in its purpose does not turn this completed act into a mere attempt. Furthermore, the trial court did not err in refusing to remove the word "concealment" from its instructions, since, as previously stated, the word is commonly defined as "to prevent disclosure or recognition of," and "to place out of sight." The jury could have reasonably found that Colquitt's actions fell within the plain meaning of "conceal."
Colquitt's Third Assignment of Error is overruled.
 V
All of Colquitt's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, and KERNS, JJ., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Stephen C. Collins
Mark M. Feinstein
Hon. Richard M. O'Neill
[1] Chenault had apparently been a prospective juror in another courtroom when she was called to fill a vacancy in the panel of prospective jurors in Colquitt's case, and counsel and the trial judge assumed, incorrectly, that she had already been sworn for voir dire purposes.
[2] The trial court overruled that objection, and Colquitt does not raise this issue on appeal.