OPINION
Appellant Christopher A. Vogelsong appeals a judgment of the Stark County Common Pleas Court convicting him of having weapons while under disability (R.C.2923.13), and cruelty to animals (R.C.959.13):
ASSIGNMENTS OF ERROR
 WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING TESTIMONY REGARDING APPELLANTS CONVERSATION TO A COUNSELOR IN VIOLATION OF OHIO EVIDENCE RULE 801(D)(1)(b) THEREBY DENYING APPELLANT A FAIR TRIAL.
 WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 WHETHER THE TRIAL COURT ERRED IN ALLOWING IRRELEVANT EVIDENCE TO BE ADMITTED THEREBY DEPRIVING APPELLANT OF A FAIR TRIAL.
Appellant and his wife, Lisa, owned an Australian Shepherd dog named Shorty. They had acquired Shorty for free from a newspaper ad. They decided the dog was too large for their home. Appellant said he would shoot the dog. Lisa replied that she did not want to know about it if appellant killed the dog.
On February 20, 2000, Lisa and Shorty were on the porch when appellant arrived home. Appellant walked up to Shorty and told him, "You're not going to live much longer. Enjoy your time." Appellant returned about an hour later. He telephoned his father, asked to use a gun, and left the home. Lisa saw appellant leave in his truck, but did not see the dog in the truck. However, the dog was not on his chain.
At around 9:00 p.m., appellant returned home, noticeably drunk. He was very excited about killing the dog. Appellant told Lisa that he shot the dog three times. He explained that the neighbors at his father's house heard the dog crying and came out to see what was going on. He also told Lisa that he could have shot each of the dogs paws off. Lisa noticed blood on appellant's pants.
Later that night, Lisa and appellant's son woke up. Appellant got the baby, who was less than a year old, to play with him. Appellant let the baby play with a cigarette lighter, telling him it was a bomb. He then tried to teach the child to say "bomb." Lisa put the baby back to sleep, and appellant passed out.
Lisa got up the next morning to go to work. She got the baby ready to take to her mother's home. Appellant told them that she did not need to take the baby to her mother's home, as he was not going to work, and would stay home with him. Lisa was concerned about appellant's behavior the night before, and was afraid to leave the child home alone with him. Lisa did not go to work, and stayed home. Appellant left the home for awhile that day, taking the baby with him. After he returned, Lisa took the baby, left the house, and moved in with her mother.
Lisa talked to her parents and her pastor about what appellant had done to their dog. Later that evening, Lisa made a report with the Stark County Sheriff's Department. She reported that she was frightened about appellant's behavior, and did not want appellant around her or her son. Lisa told the deputy about appellant shooting the dog.
Deputy Rick Stauffer spoke to appellant's father. Thereafter, he obtained an arrest warrant, based on appellant's possession and use of the gun. Based on a 1996 conviction for aggravated trafficking, appellant was under legal disability from possessing a weapon. When he was arrested, appellant told Deputy Stauffer that he did not shoot the dog, but his brother shot the dog. Appellant was indicted for having a weapon under a disability and cruelty to animals. The case proceeded to jury trial in the Stark County Common Pleas Court.
At trial, appellant's father testified that appellant asked if he could kill the dog and bury it in his backyard. Appellant told his father that the dog had been nipping at him and his wife. While he was making dinner, appellant's father heard the dog yelping and saw him running across the yard. Afraid that the neighbors would hear the dog, he took a .22 handgun and shot the dog twice in the heart. He testified that appellant's brother was not there, and did not shoot the dog.
Appellant and his father later argued about killing the dog. Appellant's father assumed that appellant had shot the dog, and was mad at him for botching the killing. When talking to Deputy Stauffer, appellant's father stated that appellant had shot the dog between the eyes. However, he testified at trial that appellant told him he tried to kill the dog by beating him to death.
At trial, appellant testified that he picked up a baseball bat at his brother's house, and took the dog to his father's to kill it. Appellant stated that after hitting the dog between the eyes, the dog got up, prompting appellant to hit him again at the base of the neck. The dog began running in circles, and appellant tried to hit him on the spine. He missed, smacking the dog on the rump. This sent the dog running away, yelping loudly. Appellant said he heard two shots, and assumed his father had killed the dog. Appellant admitted that he told his wife that he shot the dog, but testified that he thought this story sounded better than his attempt to beat the dog to death. He admitted that he lied to Deputy Stauffer about his brother shooting the dog, but made this false statement because he knew that beating the dog to death was a violation of his probation.
Appellant was convicted as charged. He was sentenced to 12 months incarceration for having a weapon under a disability, and 90 days incarceration for cruelty to animals, to be served concurrently.
 I
Appellant argues in his first assignment of error that the trial court erred in not allowing Father John Zuzik to testify about appellant's conversation with him during a court-ordered counseling session the day after the dog was killed. Appellant wanted to have the priest testify that appellant told him he beat the dog to death with a baseball bat, and enjoyed doing it. Appellant offered the testimony as either a present sense impression, or statement against interest. The court ruled that appellant could call the priest as a witness, but could not ask him about appellant's statements, as they would be hearsay. While appellant does not now argue the testimony was admissible as a present sense impression, or statement against interest, he argues that the court should have allowed the testimony under Evid.R. 801(D)(1)(b), a prior consistent statement of a witness to rebut a charge of recent fabrication, improper influence, or motive.
Appellant admits in his brief that allowing Father Zuzik's testimony before appellant testified would be premature pursuant to Evid.R. 801, and we therefore must find plain error in order to reverse. Error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. at paragraph three of syllabus.
The court did not commit plain error in refusing to allow this testimony. Evid.R. 801(D)(1)(b) provides:
(D) Statements which are not hearsay
A statement is not hearsay if:
 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
This Rule is generally interpreted as including only prior consistent statements which were made before a prior inconsistent statement, or before a motive to falsify testimony existed. State v. Nichols (1993),85 Ohio App.3d 65, 71. In the instant case, appellant's statement to Father Zuzik was made after his prior inconsistent statement to his wife that he had shot the dog. Further, the statement was made after the existence of his motive to falsify, as he was aware that he was under a legal disability prohibiting possession or use of a gun at the time he made the statement. Thus, Father Zuzik's proffered testimony was inadmissible under Evid.R. 801(D)(1)(b).
The first assignment of error is overruled.
 II
Appellant argues that counsel was ineffective based on his performance as outlined in the first and third assignments of error. Appellant first argues that counsel should have called Father Zuzik to testify after his own testimony at trial, in order to introduce statements pursuant to Evid.R. 801. He also argues the counsel was ineffective for failing to object to the introduction of irrelevant evidence through the testimony of his wife, Lisa.
In order to establish a claim of ineffective assistance of counsel, the defendant must demonstrate deficient performance by counsel and prejudice. Strickland v. Washington (1984), 466 U.S. 668; State v.Bradley (1989), 42 Ohio St.3d 136, cert. denied, 497 U.S. 1011. To demonstrate prejudice, the defendant must show that but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different. Id. Prejudice from defective representation is sufficient to justify reversal only where the result of the trial was unreliable, or the proceeding was fundamentally unfair because of the performance of trial counsel. State v. Carter (1995),72 Ohio St.3d 545, 558, cert. denied, 516 U.S. 1014.
With regard to appellant's first claim, as discussed in I above, Father Zuzik's testimony concerning appellant's prior statements was not admissible under Evid.R. 801 (D), as the statement was made after his inconsistent statement to his wife, and after the existence of a motive to falsify his testimony. Therefore, appellant has not demonstrated prejudice from counsel's failure to call Father Zuzik to the stand after appellant testified.
Appellant next argues counsel was ineffective for failing to object to Lisa Vogelsong's testimony about appellant's behavior after killing the dog, and why she was afraid to allow him to play with her baby, as outlined in assignment of error III.
Evid.R. 401 defines relevant evidence as evidence having any tendency to make the existence of a fact that is of consequence to the determination of action more or less probable than it would be without the evidence. Lisa testified about appellant allowing the baby to play with a cigarette lighter, and teaching him to call the lighter a "bomb", in the evening after shooting the dog. She further testified that she was afraid to allow appellant to stay home alone with the baby the next day.
Counsel for appellant claimed at trial that Lisa had a motive to claim appellant shot the dog, to bolster her case for custody of the child, as she was in the process of divorcing appellant. Lisa's testimony concerning appellant's behavior immediately after shooting the dog was relevant to explain why Lisa was afraid of appellant, why she left appellant, and why she was in the process of divorcing him. Further, appellant testified that he lied to Lisa, telling her he shot the dog, as he thought it would upset her less than telling her he beat the dog to death. However, Lisa's testimony concerning appellant's entire pattern of behavior during the time period in question upset her to the point where she left the home. This testimony rebutted appellant's claim that he was very concerned about Lisa and her reaction to a violent act.
Counsel's failure to object did not amount to a violation of an essential duty of representation which changed the outcome of the trial.
The second assignment of error is overruled.
 III
In his third assignment of error, appellant argues that the court committed plain error in admitting irrelevant evidence through the testimony of Lisa Vogelsong, concerning appellant playing with their baby with the lighter he called a "bomb", and her fear of leaving appellant alone with the baby. As discussed above, this evidence was relevant to explain Lisa's reaction to appellant's behavior, and to rebut appellant's attack on Lisa's credibility. The court did not commit plain error in admitting this evidence.
The third assignment of error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed.
 _________ Gwin, J.
Edwards, P.J., and Hoffman, J., concurs separately.