DECISION AND JUDGMENT ENTRY
John Lucas appeals his conviction by the Marietta Municipal Court for speeding. He argues that his conviction is against the manifest weight of the evidence. Because some competent, credible evidence supports his conviction and the trial court did not clearly lose its way and create a manifest miscarriage of justice by believing the testimony of the state's witness, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
On May 29, 2000, Ohio State Highway Patrol Trooper Michael Seabolt issued a citation to Lucas for traveling eighty-five miles per hour in sixty-five mile per hour zone, in violation of R.C. 4511.21.
Lucas pled not guilty and waived his right to a speedy trial. At Lucas' request, the trial court set the case for a trial.
At the trial, Trooper Seabolt testified that on May 29, 2000, Memorial Day, he was working a twelve-hour shift and his patrol car was equipped with a Python II radar unit. He testified that he had received specialized training with respect to the proper operation of the Python II radar unit. He also testified that he had received training in visually estimating the speed of a moving vehicle. The state presented a certificate Trooper Seabolt earned for "Electronic Speed Measuring Devices" from the Ohio State Highway Patrol. Trooper Seabolt testified that he checked the calibration of the Python II radar unit both before and after his shift and that he used the internal calibrator of the Python II radar unit during his shift. Trooper Seabolt testified that during his shift he had the opinion that the Python II radar unit was in proper working order.
Trooper Seabolt explained that while he was on patrol that day, he was traveling northbound on Interstate 77 in Marietta. The speed limit on Interstate 77 is sixty-five miles per hour. He noticed a light tan Toyota traveling southbound at a high rate of speed. He based this conclusion upon his visual estimation. As a result of his visual estimation, he activated his radar unit and received first a sixty-three mile per hour readout, which measured the speed of the vehicle in front of the tan Toyota, and then received an eighty-five mile per hour readout, which remained steady as the tan Toyota approached him and then passed him. Then Trooper Seabolt activated his vehicle's red lights and stopped the tan Toyota. Trooper Seabolt identified Lucas as the person who was driving the tan Toyota that day. He issued Lucas a citation for speeding.
Through vigorous cross-examination by Lucas, Trooper Seabolt maintained his position that the Python II radar unit operated properly and clocked him at a speed of eighty-five miles per hour. He also maintained that his visual estimation of Lucas' speed supported the readout of the Python II radar unit. Lucas attempted to impeach the officer by questioning whether the heavy traffic of the holiday weekend could have confused the reading or whether the Python II radar unit might have picked up a different vehicle.
Lucas also questioned Trooper Seabolt's truthfulness because he had checked the "heavy traffic" box on the citation form under the category of "road conditions," yet testified at the trial that there was only one other vehicle near Lucas' vehicle when he activated the Python II radar unit. Trooper Seabolt explained that he checked the "heavy traffic" box because the general road conditions that day included heavy traffic.
Lucas presented the testimony of his wife, Pamela Lucas, who was a passenger in Lucas' car. She testified that when they passed Trooper Seabolt's car, she glanced at the speedometer and noticed that it was less than seventy miles per hour. On cross-examination Pamela Lucas admitted that from her seat, she did not have a direct view of the speedometer. Lucas did not testify.
From the bench, the trial court found Lucas guilty and explicitly found Trooper Seabolt's testimony to be credible. The trial court issued a journal entry finding Lucas guilty.
Lucas appealed, but we dismissed the appeal as untimely. State v.Lucas (Mar. 30, 2001), Washington App. No. 00CA47, unreported. Lucas then filed an application for a delayed appeal, which we granted. He asserts the following assignment of error:
 I. The Trial Court Erred And Abused Its Discretion When It Found The Appellant Guilty When Such A Finding Was Against The Manifest Weight Of Evidence.
 II.
In his only assignment of error, Lucas argues that the testimony of Trooper Seabolt was not credible because (1) it was unbelievable that there were only two vehicles on the road traveling southbound on a holiday weekend; (2) that the Trooper clocked a car directly in front of Lucas' vehicle at sixty-three miles per hour, but did not testify that Lucas ever passed the vehicle; and (3) the Trooper's testimony that Lucas was traveling down a hill around a curve and up an incline was contradicted by defense evidence.
In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. In making such a determination, we sit as a thirteenth juror. Thompkins at 387, citingTibbs v. Florida (1982), 457 U.S. 31, 42. However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Thompkins at 387, quoting Martin at 172.
After reviewing the entire record, we find that the trial court did not clearly lose its way and create a manifest miscarriage of justice by believing the testimony of Trooper Seabolt. The trial court expressly stated on the record that it found Trooper Seabolt to be credible. While some of Pamela Lucas' testimony contradicted details of the stop, the trial court was free to believe all, part or none of the testimony of each witness who appeared before it, including Pamela Lucas' testimony. See State v. Nichols (1993), 85 Ohio App.3d 65, 76; State v. Harriston
(1989), 63 Ohio App.3d 58, 63. Trooper Seabolt's testimony concerning his visual estimation of Lucas' speed, his calibration of the Python II radar unit, and the readout of Lucas' speed on the Python II radar unit constitutes some competent, credible evidence that Lucas was traveling eighty-five miles per hour in a sixty-five mile per hour zone. Thus, Lucas' conviction for violating R.C. 4511.21 is not against the manifest weight of the evidence. Accordingly, we overrule Lucas' only assignment of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.