OPINION
Appellant Nicholas M. Meade appeals from a decision and order of the juvenile court adjudicating him delinquent after finding that Meade had committed three counts of Rape. Meade argues that the trial court erred by denying his pre-trial motion for a bill of particulars, and by denying his motion for a mistrial made during the proceedings. Meade also contends that his counsel provided him with constitutionally ineffective assistance of counsel, and that the trial court's finding that he had committed three counts of Rape was not supported by sufficient evidence, and was against the manifest weight of the evidence.
We conclude that the trial court did not err by denying Meade's motion for a bill of particulars, because it did so on the basis of the State's representation that it had already divulged all the information that it had regarding the times when the offenses may have occurred. We also conclude that the trial court did not err by overruling Meade's motion for a mistrial when it became known that the State's representation regarding full disclosure was false; Meade received a fair trial despite the failure of full disclosure, because the trial court ordered the State to reveal the information to Meade that had been withheld, and gave Meade the opportunity to request a continuance to adjust his defense strategy to the new information. We further conclude that Meade has failed to establish that his defense counsel was constitutionally ineffective for not availing himself of the opportunity for a continuance, because Meade has failed to show a reasonable probability of a different outcome if his defense counsel had done so. We also conclude that the trial court's finding that Meade was delinquent by reason of having committed the three counts of Rape with which he was charged was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
In January, 2000, a complaint was filed in the Juvenile Division of the Common Pleas Court of Montgomery County, charging Meade with being delinquent in that he had committed three counts of Rape against his step-brother, S.C., in violation of R.C. 2907.02(A)(1)(b). The complaint alleged that the offenses occurred at some time between March, 1996, and April, 1999. At the time of the hearing, Nicholas was 17 years old, and S.C. was nine years old. At the time of the alleged offenses, Nicholas was 15 years old, and S.C. was between the ages of six and eight.
Prior to trial, Meade filed a motion for a bill of particulars, requesting that the State provide specific dates and times for each of the three Rape counts brought against him. Meade also moved to suppress any statements he made to police. Immediately prior to the hearing on the charges, Meade withdrew his motion to suppress. With respect to Meade's motion for a bill of particulars, the prosecutor represented that it had fully disclosed to the defense all of the information available to it in the case. Meade's defense counsel accepted the prosecutor's representation, but voiced skepticism that the State had no evidence that would have allowed the defense to narrow the time frame during which the charged offenses were allegedly committed. On this basis, the trial court denied the motion for a bill of particulars.
In order to prove its charges, the State called S.C. to the witness stand, who testified that Meade engaged in sexual conduct with him in the basement and bedroom of S.C.'s house on Circleville Street, in Vandalia Ohio. According to S.C., Meade engaged in sexual conduct with him "more than one time" in both the basement and bedroom. S.C. testified that during the encounters he asked Meade to stop, but Meade refused. S.C. testified that he did not tell his mother, Vicky Meade, who was Nicholas' stepmother, about the abuse at first, because he was scared, and Nicholas had threatened to "do it harder" if he told.
The State also called Vicky Meade as a witness. During cross-examination, Ms. Meade revealed that she had given the prosecutor a list of the dates on which Nicholas had visited her home on Circleville Street in 1996 and 1997. Upon hearing this, Meade's defense counsel moved for a mistrial on the ground that the State had misrepresented that it had fully disclosed all material available to it that would have narrowed the time frame in which the alleged offenses occurred.
After adjourning to chambers to discuss the motion, the trial court ruled that the list should have been disclosed to the defense, because it "narrows the time frame down upon which the complaint is based, [and] gives * * * some clarification as to when the alleged delinquent had access with regards to the victim." Nevertheless, the trial court refused to declare a mistrial. Instead, it ordered the prosecutor to turn the list over to defense counsel immediately, and adjourned the proceedings from 11:15 a.m. to 1:15 p.m., to allow the defense to review the information contained in the list. The trial court stated that it would "entertain" a request from defense counsel for a continuance of the proceedings when it reconvened at 1:15 p.m. When the court reconvened, defense counsel reserved his right to request a continuance based on the newly disclosed list until the close of the State's case. The trial court acknowledged this reservation of the right to request a continuance, and indicated that it would consider a request for a continuance made at the close of the State's case. Neither at this time, nor later, did the trial court indicate any unwillingness to grant a continuance to allow the juvenile to prepare a defense based upon the newly disclosed information.
At the close of the State's case, defense counsel did not move for a continuance, but instead, called several witnesses on Meade's behalf, including Meade, himself, who denied S.C.'s allegations. Meade testified that he let S.C. touch his private parts once after S.C. had kept "bugging" him to let him do it.
Following the hearing, the trial court found that the State had proven the Rape charges beyond a reasonable doubt, and that, therefore, Meade was delinquent by reason of having committed acts which if committed by an adult would constitute felonies of the first degree. In its May 30, 2000 Order of Disposition, the trial court committed Meade to the Department of Youth Services for a minimum period of 12 months and a maximum period not to exceed Meade's attainment of his 21st birthday. However, the trial court suspended Meade's commitment to the Department of Youth Services and placed him on supervised probation for a term of one year. As a condition of probation, the trial court ordered Meade to serve a 29-day sentence at the Dora Tate Center, and to attend counseling with a sex offender therapist. The trial court ordered reviews of Meade's progress to be sent to the trial court every 30 days.
Meade sought and received a stay of his commitment to the Dora Tate Center pending his appeal to this court. Meade appeals from the trial court's May 30th Order of Disposition.
 II
Meade's First, Second, and Third Assignments of Error state as follows:
 THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A BILL OF PARTICULARS.
THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL.
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
Initially, Meade asserts that the trial court erred in denying his motion for a bill of particulars, wherein he sought to have the State provide him with the specific dates and times for the alleged offenses. Unlike the Ohio Rules of Criminal Procedure, which provide for a request for a bill of particulars — Crim. R. 7(E) — the Ohio Rules of Juvenile Procedure do not so provide. Meade argues that due process requires that a juvenile be given a bill of particulars upon request to enable him to prepare a defense to any charge leveled against him. However, even if we assume, without deciding, that a juvenile possesses a due process right to be provided with a bill of particulars upon request, it still would not change the result here.
At the time the trial court overruled Meade's request for a bill of particulars, the State had represented that it had made a full disclosure of all of the information available to it regarding the case. The trial court did not act improperly by accepting that representation. Indeed, even defense counsel felt compelled to accept the State's representation, though he did express skepticism, which turned out to be well-founded. Therefore, the question remaining before us is whether the trial court erred in failing to grant Meade's motion for a mistrial upon learning that the State had not made a full disclosure, as it had represented.
Mistrials need be declared only when the ends of justice so require, and a fair trial is no longer possible. State v. Garner (1995),74 Ohio St.3d 49, 59. The decision to grant or deny a mistrial lies within the trial court's sound discretion. Id. In order to demonstrate that a trial court has abused its discretion in denying a motion for a mistrial, it must be shown that the trial court's decision was arbitrary, unreasonable, or unconscionable. State v. Nichols (1993),85 Ohio App.3d 65, 69.
Here, any prejudice that Meade suffered as a result of the State's failure to divulge the existence of Mrs. Meade's list of his visitations for 1996 and 1997 could have been cured by a request for a reasonable continuance to allow Meade's defense counsel to review the list and adjust his trial strategy, if necessary. Presumably, the main interest the defense had in narrowing the time frame was to establish, if possible, an alibi for the time of one or more of the offenses. The trial court gave defense counsel an opportunity to review the list, and advised defense counsel that it was willing to entertain a motion for a continuance. Since no jury was involved, the trial court could have given the defense ample time to review the information that had been withheld. The defense, after not only reviewing the information, but after hearing all of the State's evidence, chose not to seek a continuance.
Meade contends that his defense counsel provided him with constitutionally ineffective assistance by failing to request additional time to review the information withheld by the State. We disagree.
In Ohio, a properly licensed attorney is presumed to be competent; therefore, a criminal defendant has the burden of showing that his counsel was constitutionally ineffective. State v. Calhoun (1999),86 Ohio St.3d 279, 289. In order to prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that but for his counsel's errors, there is a reasonable probability that the outcome of his trial would have been different. Strickland v.Washington (1984), 466 U.S. 668. A failure to make an adequate showing on either the "performance" or "prejudice" prong of the Strickand
standard will doom the defendant's claim. Id.
Here, Meade has not shown how his defense would have been different, let alone, how the outcome of his trial would have been different, if his defense counsel had requested additional time to review the information withheld by the State. For all we know from this record, Meade and his counsel discussed the dates, and concluded that no alibi could be established. In that event, experienced trial counsel would not want to draw the attention of the trial court, as the fact-finder, to the fact that no alibi could be established; to the contrary, trial counsel would prefer in that event to let the matter drop without further comment, as exemplified by this record. Furthermore, Ms. Meade testified that the list of Nicholas' visitation was incomplete. She compiled the list not for the trial, but simply because Nicholas' visitation had become an issue between her husband (Nicholas's father) and his former wife (Nicholas' natural mother). Ms. Meade testified that once the visitation issue had been dropped, she stopped listing Nicholas' visits. Ms. Meade testified there were times that Nicholas could have visited her house between September, 1997 and January, 1998, which she simply did not write down, and she had "no idea" of the dates as to when Nicholas was at her house in 1998. Therefore, Meade has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that the outcome of his trial would have been different absent the claimed errors.
Accordingly, Meade's First, Second, and Third Assignments of Error are overruled.
 III
Meade's Fourth Assignment of Error states:
 THE DECISION OF THE TRIAL COURT WHICH ADJUDICATED APPELLANT A DELINQUENT CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Meade argues that the trial court's finding that he committed the three counts of Rape with which he was charged is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.
When considering whether the evidence presented at trial is sufficient to support a conviction, an appellate court must determine whether the evidence, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt, with the evidence presented viewed in a light most favorable to the prosecution.Id.
Meade was charged with raping S.C., pursuant to R.C.2907.02(A)(1)(b), which states in relevant part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
R.C. 2907.01(A) defines "sexual conduct" as meaning
 * * * vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
Here, S.C., who was nine years old at the time of trial, testified that his step-brother Meade performed fellatio and anal intercourse on him more than one time in the basement, and more than one time in the bedroom of his home on Circleville Street in Vandalia, Ohio. S.C. testified that he asked Meade to stop, but Meade refused. S.C. also testified that he did not tell anyone about Meade's actions, because he was afraid of Meade, who had warned him at one point, that he would "do it harder" if S.C. told someone. This evidence, if believed, is alone sufficient to establish the elements of the offense of Rape as set forth in R.C.2907.01(A)(1)(b).
The weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Deference is given to the findings of the trier of fact because the trier of fact is able to observe the witnesses' demeanor, gestures, and voice inflections and use those observations in weighing the witnesses' credibility.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In considering whether a conviction is against the manifest weight of the evidence, a reviewing court must weigh the evidence presented and consider the credibility of the witnesses to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
Here, the trial court's decision to find Meade delinquent on the basis that he committed the three counts of Rape with which he was charged was not against the manifest weight of the evidence. Given S.C.'s young age when the alleged crimes occurred, it is not surprising that he could not remember the exact times, locations, and number of times he was abused by Meade. His inability to remember those details does not make his testimony inherently unreliable. S.C.'s failure to raise his allegations against Meade sooner is also understandable in light of the threats that Meade made to him. The fact that S.C.'s medical exam revealed no physical manifestations of sexual assault was unsurprising since the exam was conducted several months after the last reported incident of abuse occurred. The facts that S.C. made the allegations against Meade after he had watched the movie Deliverance, which contains scenes depicting male homosexual rape, and after his mother had related to him that she had been abused during her childhood, do not establish fabrication on the part of S.C. These factors may have prompted S.C. to overcome his reluctance and make a truthful report of the rapes he endured. These were all facts that the trial court could have and, presumably, did take into account in reaching its decision; however, they do not demonstrate that the trial court's decision is contrary to the manifest weight of the evidence.
The same is true of a statement taken from the notes from Ms. Meade's and S.C.'s family physician, Dr. Mark Striebel, that was first proffered in evidence after the State's objection to its admission had been sustained, but was later admitted in evidence, without objection, as part of S.C.'s medical records. Dr. Striebel's notes from March, 1999, indicated that S.C. initially had stated that his step-father had beaten him, but then retracted the allegation after his mother became angry.
Meade has not assigned as error the trial court's initial refusal to admit in evidence Dr. Striebel's statement from his notes, apparently because the statement was eventually admitted as part of S.C.'s medical records. Meade instead argues that this fact damaged S.C.'s credibility. However, the statement, along with the remainder of S.C.'s medical records, was presented to the trial court, and the trial court chose to believe S.C.'s allegation against Meade notwithstanding his alleged statement to Dr. Striebel. Because the trial court was in the best position to gauge S.C.'s credibility, we cannot say that the trial court's decision was contrary to the manifest weight of the evidence. Based upon our review of the transcript of the trial, we are not prepared to find S.C.'s testimony unworthy of belief.
Meade's Fourth Assignment of Error is overruled.
 IV
All of Meade's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 __________________ FAIN, J.,
GRADY, P.J., and BROGAN, J., concur.