OPINION
{¶ 1} Defendant-appellant, Michael W. Craven, appeals his conviction and sentence in the Butler County Court of Common Pleas for sexual battery in violation of R.C. 2907.03(A)(2).
 {¶ 2} Julie C. and Eric Meyer are an unmarried couple who live together in an apartment in Hamilton, Ohio. On the evening of January 28, 2005, Julie and Eric held a party at their apartment to celebrate Eric's recent release from jail where he had served a sentence for driving under a suspension. Eric invited a number of people over to his apartment that night, including Donny Helton, who asked if he could bring with him his girlfriend and appellant. Eric, who knew appellant, told Helton he had no problem with him bringing those additional guests.
 {¶ 3} When the party started around 7:00 p.m., Julie began drinking "Mike's Hard Lemonade," an alcoholic beverage, and consuming "Jello shots," a mixture of Jello, water, and vodka. Among those present were Rhonda Huff and her sister, Jodie Colmar, who lived in neighboring apartments. As the evening progressed, Julie and Eric had an argument over a photograph Eric had taken of her. Eric left the apartment with Rhonda "to cool down." Julie continued to drink throughout the evening. By the time Eric and Rhonda returned about 45 minutes later, Julie had become quite intoxicated. Following her return, Rhonda saw appellant grab Julie's breasts.
 {¶ 4} At some point during the evening, Eric, Helton, and appellant went out on the apartment's balcony and smoked marijuana. Before midnight, Helton and his girlfriend left, leaving appellant alone with Eric and Julie. As Eric, Julie, and appellant sat in the living room watching a movie, Julie tried to hug and kiss Eric. Eric pushed her away. Julie, somewhat angry at Eric's rejection, announced that she was going to bed, because she had "had an awful lot to drink" and "was just too tired to stay awake anymore." As Julie left to go to bed, Eric and appellant remained in the living room, watching a movie.
 {¶ 5} Julie went straight to her bedroom, where she collapsed on the bed, fully clothed. The next thing Julie remembered was being half awake, with her eyes closed, feeling the bed moving, like it was "hitting up against the wall." Julie could tell that somebody was having sex with her because she could feel someone's penis inside her vagina, but she could not open her eyes right away. When she was finally able to open her eyes, she saw appellant smiling at her. Julie said to appellant, "You are not Eric." Appellant replied, "You don't want Eric to know." At that moment, Julie screamed, "No!"
 {¶ 6} Eric, who had passed out on the love seat while watching a movie with appellant, heard Julie screaming. Eric went to the bedroom, where he saw appellant coming out of the room, buttoning and zipping up his pants. Eric then saw Julie, who was wearing only a shirt, with a bra underneath, and a pair of socks. Julie said to Eric, "[O]h my God he raped me." Appellant responded to this by saying, "no, I didn't Eric, no I didn't." Julie then started to fall to the ground. When Eric went to catch her, appellant bolted past Eric and left the apartment.
 {¶ 7} Eric ran to the kitchen and grabbed two butcher knives. He also used his cell phone to call 911. He then proceeded up the street to chase after appellant, who kept yelling out, "No I didn't Eric, No I didn't." Eric chased appellant for "maybe 17 or 18 buildings" before losing sight of him when "he took off into the woods into a little wooded patch area." Eric then returned to the apartment.
 {¶ 8} In the meantime, Rhonda Huff, whose apartment was immediately below Julie and Eric's, had heard the sound of a bed squeaking for what she estimated to be about ten to fifteen minutes. Rhonda then heard Julie scream, "No!" She then went to the front of her apartment and saw Eric and appellant running up the street. Rhonda called her sister, Jodie Colmar, and then went to Julie's apartment, where she saw Julie passed out in the middle of the hallway. After Julie had regained consciousness, she started crying. Rhonda tried to get Julie dressed because she had heard from Eric that the police were coming. When the police and Jodie arrived at Julie's apartment, Julie kept repeating that she "was sorry, sorry, Eric, thought it was you."
 {¶ 9} On March 30, 2005, appellant was indicted on one count of sexual battery in violation of R.C. 2907.03(A)(2), a felony of the third degree. Appellant entered a plea of "not guilty" to the charge.
 {¶ 10} On July 18, 2005, appellant waived his right to a jury trial and had a bench trial on the sexual battery charge. The trial court found appellant guilty as charged and sentenced him to two years in prison.
 {¶ 11} Appellant now appeals, raising the following assignments of error:
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THERE WAS INSUFFICIENT EVIDENCE FOR THE TRIAL COURT TO FIND APPELLANT GUILTY OF SEXUAL BATTERY."
 {¶ 14} Appellant argues that the state failed to present sufficient evidence to convict him of sexual battery in violation of R.C. 2907.03(A)(2). We disagree with this argument.
 {¶ 15} "[I]n reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. McKnight,107 Ohio St.3d 101, 112, 2005-Ohio-6046, ¶ 70, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In reviewing a sufficiency of the evidence claim, a reviewing court cannot substitute its evaluation of the credibility of the witnesses for that of the trier of fact. State v. Benge, 75 Ohio St.3d 136,143, 1996-Ohio-227.
 {¶ 16} R.C. 2907.03 defines the offense of sexual battery, as follows:
 {¶ 17} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 18} "* * *
 {¶ 19} "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
 {¶ 20} Appellant first argues that the state failed to demonstrate that he "knew" that Julie's "ability to appraise or control her own conduct was substantially impaired." However, when the evidence presented is viewed in a light most favorable to the state as it must be when reviewing a sufficiency of the evidence claim, see Jenks, 61 Ohio St.3d at 112, it is clear that there is ample evidence to support a finding that appellantknew that Julie's ability to appraise the nature of or control her own conduct was substantially impaired.
 {¶ 21} R.C. 2901.22(B) states, in pertinent part, that "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 22} Several witnesses who observed Julie on the night in question, including Eric, Rhonda Hoff, and Jodie Colmar, testified that Julie was very intoxicated from drinking alcoholic beverages and consuming "Jello shots" made with vodka. The police officer who responded to Eric's 911 call observed that Julie appeared to be intoxicated. Julie herself acknowledged that on the night in question, she was "drunker than [she had] ever been in [her] life." The evidence showed that appellant arrived at the party sometime after Eric had left with Rhonda Huff for about 45 minutes following an argument he had had with Julie. Julie drank alcoholic beverages and consumed "Jello shots" throughout the evening.
 {¶ 23} Under these factual circumstances, the trier of fact could have easily inferred that appellant had knowledge that Julie's ability to appraise the nature of or control her own conduct was substantially impaired. See R.C. 2907.03(A)(2) and2901.22(B).
 {¶ 24} Appellant himself acknowledges that "the evidence is clear" that Julie "was very intoxicated before she went to bed[.]" However, appellant asserts that "there is no evidence that [he] knew that [Julie C.] would not be able to ascertain with whom she was having contact." In support, he points to Rhonda Huff's testimony that she heard sounds consistent with persons having sexual intercourse (i.e., the squeaking of the bed in the apartment above hers) for approximately 15 minutes. Appellant contends that "[t]he fact that sexual activity could take place for fifteen minutes without protest is strong evidence that the person does not object." We find this argument unpersuasive.
 {¶ 25} As we have noted, the evidence clearly showed that Julie was highly intoxicated at the time she went to bed on the evening in question. It can be inferred from this fact that Julie was unconscious at the time that appellant commenced his sexual assault on her, and, therefore, that Julie was unable to consent to appellant's conduct. In fact, Julie's own testimony indicated that she was unconscious when appellant initially began engaging in sexual conduct with her.
 {¶ 26} Furthermore, a close examination of Rhonda Huff's testimony regarding the length of time that she heard squeaking sounds from the bed above her apartment shows that Rhonda's estimate that the squeaking lasted for ten to fifteen minutes was only that — an estimate. When pressed on the issue, Rhonda stated, "I wasn't counting[,]" and eventually admitted, "I don't know. It was a while."
 {¶ 27} Appellant also argues that the fact that Julie was heard apologizing after the incident, saying "I'm sorry, Eric, [I] thought it was you," weighs in favor of finding that he "had initial indications from [Julie C.] that the sex was consensual." We find this argument unpersuasive.
 {¶ 28} As we have previously stated, the evidence shows that Julie was unconscious at the time appellant began engaging in sexual conduct with her. As such, he could not claim that she consented to that conduct. The evidence further shows that when Julie realized that appellant, not Eric, was having sex with her, she objected immediately by screaming "No!" Julie's screaming woke Eric, who was passed out in the living room. Rhonda Huff also heard Julie's screams. In light of the evidence showing that appellant began engaging in sexual conduct with Julie while she was unconscious, he cannot claim that he was honestly mistaken as to whether or not she consented to his conduct.
 {¶ 29} Appellant also argues that the record leaves reasonable doubt that he engaged in sexual conduct with Julie, because DNA testing revealed that only Eric's semen, and not appellant's, was collected from Julie's person. We find this argument unpersuasive.
 {¶ 30} Initially, the state is not required to prove that an offender emitted semen in order to prove that the offender engaged in sexual conduct with another. R.C. 2907.01(A) defines "sexual conduct" as meaning "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 31} In this case, Julie's testimony shows that appellant put his penis into her vagina. This was sufficient to show that appellant engaged in sexual conduct with Julie. R.C. 2907.01(A). The fact that appellant's guilt was not established by DNA evidence is immaterial since it was not necessary for the state to prove that appellant emitted semen in the course of his committing the offense of sexual battery on Julie. See id. and R.C. 2907.03(A)(2).
 {¶ 32} Furthermore, the fact that DNA testing revealed the presence of Eric's semen, but not appellant's, on Julie's person is unsurprising, since the evidence showed that Eric and Julie had sexual relations on the Wednesday before the incident, which occurred on a Friday night or early Saturday morning. In any event, the lack of DNA evidence inculpating appellant does not render the state's evidence insufficient to convict appellant of sexual battery under R.C. 2907.03(A)(2).
 {¶ 33} Appellant's first assignment of error is overruled.
 {¶ 34} Assignment of Error No. 2:
 {¶ 35} "THE TRIAL COURT'S GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} Appellant argues that his conviction for sexual battery was against the manifest weight of the evidence for all of the reasons he identified in his first assignment of error regarding his challenge to the sufficiency of the evidence. We disagree with this argument.
 {¶ 37} In considering a defendant's claim that his conviction was contrary to the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences that can be drawn from it, and considers the credibility of witnesses in order to determine whether in resolving conflicts in the evidence, the jury or trier of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 38} In reviewing a manifest weight of the evidence claim, an appellate court is obligated to consider the credibility of the witnesses and the weight to be given the evidence presented. See Thompkins, 78 Ohio St.3d at 387, quoting Martin,20 Ohio App.3d at 175. However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, and State v.Nichols (1993), 85 Ohio App.3d 65, 76.
 {¶ 39} In this case, a careful review of the entire record, along with a consideration of the credibility of the witnesses demonstrates that the trier of fact's finding of guilt on the sexual battery charge was supported by sufficient evidence and was not contrary to the manifest weight of the evidence.
 {¶ 40} Although Julie was quite intoxicated at the time the assault occurred, her testimony was corroborated by Eric and Rhonda Huff's testimony, each of whom heard Julie scream "No!" After he heard Julie scream, Eric saw appellant come out of the bedroom, buttoning and zipping up his pants.
 {¶ 41} Furthermore, it is apparent that Julie was in no condition to consent to appellant's conduct. Even appellant admits that Julie was heavily intoxicated on the night in question. Additionally, Rhonda Huff saw appellant grab Julie's breasts earlier in the evening. Consequently, this is not a case where the trier of fact lost his way in determining any conflicts or inconsistencies in the evidence. See Thompkins,78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175. There is ample evidence to support the trial court's decision to find appellant guilty of the offense with which he was charged.
 {¶ 42} Appellant's second assignment of error is overruled.
 {¶ 43} Assignment of Error No. 3:
 {¶ 44} "THE TRIAL COURT ERRED IN IMPOSING A PRISON TERM THAT EXCEEDED THE SHORTEST PRISON TERM AUTHORIZED FOR THE OFFENSE."
 {¶ 45} Appellant argues that the trial court's imposition of a nonminimum sentence after making the requisite findings of fact, pursuant to R.C. 2929.14(B), violates the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. The state concedes error in this regard and requests that this matter be remanded to the trial court for resentencing.
 {¶ 46} We agree that the trial court's imposition of a nonminimum sentence, after the trial court made the findings specified in R.C. 2929.14(B), violates Foster. See Foster,109 Ohio St.3d 1, paragraph one of the syllabus. Therefore, the judgment of the trial court is reversed as to sentencing and this cause is remanded for resentencing pursuant to Foster. Id. at 31, ¶ 104. The trial court will have full discretion to impose a prison sentence within the statutory range and is no longer required to make findings or give its reasons for imposing more than the minimum sentence. Id. at paragraph seven of the syllabus.
 {¶ 47} Appellant's third assignment of error is sustained.
 {¶ 48} The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for purposes of resentencing only.
Walsh and Brogan, JJ., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.