OPINION
{¶ 1} Defendant-appellant, Brian Lamont Adams, appeals his conviction in the Butler County Court of Common Pleas on one count of robbery in violation of R.C. 2911.02(A)(2).
 {¶ 2} On December 16, 2005, two males, one white and the other black, who were later identified as Jason Byrd and appellant, entered the Speedway convenience *Page 2 
store at the corner of Breiel Boulevard and Roosevelt Boulevard in Middletown, in Butler County, Ohio. The only person inside the store at the time was the store's night clerk, Jessica Engle, who was changing the donuts in the donut case. Ms. Engle heard the men shouting something but, initially, could not understand what they were saying. However, she soon realized they were shouting, "it was a robbery, get down."
 {¶ 3} Byrd went behind the counter to the cash registers, while appellant stood in front of one of the store's islands. Pursuant to her training, Ms. Engle made her presence known to the perpetrators by showing them where she was. When she did, appellant turned around and said, "Oh shit," and covered his face with his jacket. Appellant then came at Ms. Engle, striking her in the face, pushing her down on the floor, and holding her there. He then told her that "everything was going to be okay."
 {¶ 4} Meanwhile, Bryd kept screaming at Ms. Engle, demanding that she tell him how to open the cash register. From her position on the floor, Ms. Engle tried to instruct Byrd on how to open the cash register. Appellant relayed those instructions to Byrd. However, Byrd was still unable to open the cash register. When other customers, including Rhonda Achor, pulled up to the store, Byrd and appellant rushed out of the store and ran off in different directions. On their way out, one of the perpetrators told Ms. Achor, "Get the fuck out the way bitch."
 {¶ 5} When Ms. Achor went into the store, she found Ms. Engle on the floor, "crying terribly and shaking all over." The police were called to the scene. Two of the officers who responded were Officer David Kirsch and Officer Robin Stone of the Middletown Police Department. Officer Kirsch obtained a videotape from one of the store's surveillance cameras, and reviewed it. Officer Robin Stone responded to the scene with her police dog, Canine Kane. Officer Stone and Canine Kane attempted to *Page 3 
track the suspects involved in the attempted robbery but were unsuccessful.
 {¶ 6} Approximately two hours after the attempted robbery, Officer Stone and another officer responded to a call from Deborah Reed on South Breiel Boulevard. Reed had called the police earlier and requested them to speak with her boyfriend, who was appellant. When Officer Stone and her partner arrived, Reed told them that when she returned from work, she discovered that appellant was "irate[,]" and that she wanted him out of the apartment.
 {¶ 7} When Officer Stone and Reed tried to enter the apartment, appellant tried to block the door. At that moment, Officer Stone observed a white male, who turned out to be Byrd, run out of the back of the apartment. Officer Stone's partner chased after him. Officer Stone got into a brief scuffle with appellant and called for assistance. Officer Kirsch responded to the call, but by the time he got there, Officer Stone had already handcuffed appellant.
 {¶ 8} Officer Kirsch noticed a jacket that was in appellant's residence was similar to one he observed in the surveillance videotape taken from the Speedway store that had been robbed earlier that night. Upon further inspection, Officer Kirsch also noticed the clothing appellant was wearing was similar to the clothing worn by the black male suspect in the aborted robbery. Appellant was taken to the Middletown Police Department, where he was booked.
 {¶ 9} On February 1, 2006, appellant was indicted by the Butler County Grand Jury on one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree; one count of resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree; and one count of illegal use or possession of drug paraphernalia, a *Page 4 
misdemeanor of the fourth degree.[1]
 {¶ 10} Appellant initially pled not guilty to the charges. However, immediately prior to his trial, appellant pled guilty to the two misdemeanor charges against him. He also waived his right to a jury trial on the robbery charge. The trial court accepted appellant's guilty pleas to the two misdemeanor charges and postponed sentencing appellant on those charges until after his trial on the robbery charge had been held. The trial court also accepted appellant's waiver of his right to a jury trial, after finding that appellant's waiver was made knowingly, intelligently, and voluntarily.
 {¶ 11} On May 15, 2006, appellant was tried to the court on the robbery charge. Appellee presented the testimony of several witnesses, including Officer Kirsch, Officer Stone, Ms. Engle, and Ms. Achor, who testified to the facts related above. At the close of appellee's case, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court overruled appellant's motion.
 {¶ 12} Appellant testified on his own behalf. At one point during his testimony, appellant admitted that he and Byrd "scared and shocked [Ms. Engle] by our actions of what we did." Appellant also admitted that he and Byrd were wrong "for being in that store" and "for everything else," but he repeatedly insisted that he did not hit Ms. Engle.
 {¶ 13} At the close of evidence and following closing arguments, the trial court expressly rejected appellant's claim that he did not hit Ms. Engle, and found appellant guilty of robbery in violation of R.C.2911.02(A)(2). The trial court sentenced appellant to a five-year prison term for his robbery conviction, a 90-day jail term for resisting arrest, and another 90-day jail term for illegal use or possession of drug paraphernalia. The trial court ordered appellant to serve all of the terms concurrently. *Page 5 
 {¶ 14} Appellant now appeals, raising four assignments of error. We shall address appellant's third assignment of error, first, in order to facilitate our analysis of the issues raised in this appeal.
 {¶ 15} Assignment of Error No. 3:
 {¶ 16} "THE TRIAL COURT IMPROPERLY DENIED DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."
 {¶ 17} Appellant argues that the trial court erred by denying his Crim.R. 29 motion for acquittal at the close of appellee's case because the evidence presented by appellee was insufficient to sustain a conviction for robbery.
 {¶ 18} Crim.R. 29(A) states in pertinent part that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 19} "A motion for acquittal at the close of the state's case tests the sufficiency of the evidence. Pursuant to Crim.R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each material element of the crime beyond a reasonable doubt." State v. Miley (1996),114 Ohio App.3d 738, 742, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, 263. An appellate court "will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt."Miley. A defendant may not challenge the sufficiency of the *Page 6 
evidence on appeal unless he has moved for acquittal at trial. State v.McCloud, Stark App. No. 2005-CA-00282, 2006-Ohio-5317, ¶ 12.
 {¶ 20} Appellant was essentially charged under R.C. 2911.02(A)(2) with aiding and abetting Byrd in robbing a Speedway in Middletown, in Butler County, Ohio. R.C. 2911.02 states in pertinent part:
 {¶ 21} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 22} "* * *
 {¶ 23} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 24} "* * *
 {¶ 25} "(B) Whoever violates this section is guilty of robbery. A violation of division (A) * * * (2) of this section is a felony of the second degree."
 {¶ 26} Appellant first argues that appellee failed to present sufficient evidence to show that he inflicted, attempted to inflict, or threatened to inflict physical harm on Ms. Engle. He asserts that when Ms. Engle's testimony is viewed in its totality, the evidence reveals that he was merely "trying to aid and comfort her." We disagree with this argument.
 {¶ 27} R.C. 2901.01(A)(3) defines the phrase "[p]hysical harm to persons" as meaning "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 28} When the evidence is viewed in a light most favorable to appellee as it must be for purposes of evaluating a Crim.R. 29(A) motion for acquittal, see Miley, 114 Ohio App.3d at 742, citingBridgeman, 55 Ohio St.2d at 263, it is clear that appellee *Page 7 
presented sufficient evidence to establish that appellant inflicted, attempted to inflict, or threatened to inflict physical harm on Ms. Engle.
 {¶ 29} The evidence showed that when Ms. Engle made her presence known to Byrd and appellant during the robbery, as she had been trained to do, appellant was surprised and exclaimed, "Oh shit." Appellant then walked up to Ms. Engle, hit her in the face, pushed her down on the floor, and held her there. Ms. Engle testified that while she was shocked that appellant had hit her, his striking her in the face did not hurt at the time he did it. However, Ms. Engle testified that her face did hurt her the next day after she got up, and that it felt "[k]ind of like a bruised feeling." Thus, sufficient evidence was presented by appellee in its case-in-chief to allow reasonable minds to reach different conclusions as to whether appellee had proven the material element of inflicting, attempting to inflict, or threatening to inflict physical harm on another beyond a reasonable doubt. See Miley,114 Ohio App.3d at 742, citing Bridgeman, 55 Ohio St.2d at 263.
 {¶ 30} Additionally, we reject appellant's argument that the evidence shows that he was merely trying to aid and comfort Ms. Engle during the attempted robbery. The testimony showed that after appellant walked up to Ms. Engle, hit her in the face, pushed her to the floor, and held her there, appellant told her that "everything was going to be O.K." However, when the evidence is viewed in the light most favorable to appellee as it must be for purposes of evaluating the Crim.R. 29(A) motion, the trial court, in its role as trier-of-fact, could have reasonably concluded, as it, in fact, did, that appellant said this to Ms. Engle merely to calm her down and "to relieve some of the stress of the situation" in order to make her comfortable enough so that she could assist him and Byrd by telling them how to get into the cash register. *Page 8 
 {¶ 31} Appellant also argues that appellee failed to prove that he aided or abetted Byrd in robbing the Speedway, or that he was even aware that Byrd planned to commit the robbery when the two of them entered the store. We disagree with this argument.
 {¶ 32} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson,93 Ohio St.3d 240, syllabus, 2001-Ohio-1336.
 {¶ 33} Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Lett, 160 Ohio App.3d 46, 52,2005-Ohio-1308. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. Id.
 {¶ 34} In this case, when the evidence is viewed in a light most favorable to appellee as it must be for purposes of evaluating a Crim.R. 29(A) motion for acquittal, there was ample evidence presented to allow the trier-of-fact to find that appellant aided and abetted Byrd in his attempted robbery of the Speedway. Appellant walked in the store with Byrd. When he saw there was an employee inside, he walked up to her, hit her in the face, pushed her to the floor, and held her down. There was also evidence appellant relayed instructions from Ms. Engle to Byrd concerning how to open the cash register. Thus, there was evidence showing that appellant engaged in overt acts of assistance to aid Byrd in robbing the Speedway, and the trier of fact could have *Page 9 
reasonably inferred from the circumstances that appellant's intent to carry out the robbery was the same as Byrd's See Johnson, 93 Ohio St.3d at syllabus.
 {¶ 35} In light of the foregoing, the trial court did not err in overruling appellant's Crim.R. 29(A) motion for acquittal.
 {¶ 36} Appellant's third assignment of error is overruled.
 {¶ 37} Assignment of Error No. 1:
 {¶ 38} "THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF ROBBERY IN VIOLATION OF R.C. 2911.02(A)(2)."
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 41} Appellant argues these two assignments of error together and, therefore, we shall address them together. However, we must begin by noting that appellate review of a challenge to the sufficiency of the evidence differs from appellate review of a challenge to the manifest weight of the evidence. State v. McKnight, 107 Ohio St.3d 101, 112,2005-Ohio-6046, citing State v. Scott, 101 Ohio St.3d 31, 2004-Ohio-10.
 {¶ 42} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" (Emphasis added.) McKnight, 107 Ohio St.3d at 112, quoting State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, a reviewing court is not permitted to substitute its judgment for that of the jury's regarding the credibility of witnesses. See State v. Benge, 75 Ohio St.3d 136, 143, 1996-Ohio-227. *Page 10 
 {¶ 43} In considering a challenge to the manifest weight of the evidence, an appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences [that can be drawn from it], considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 44} While a reviewing court must consider the credibility of the witnesses in evaluating a manifest weight of the evidence claim, the court must be mindful of the fact that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the jury. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The decision of the jury is owed deference since the jury is "`best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" State v. Miles (Mar. 18, 2002), Butler App. No. CA2001-04-079, quoting Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80; State v. Nichols (1993),85 Ohio App.3d 65, 76.
 {¶ 45} Appellant first argues that appellee failed to meet its burden of proof regarding the issue of whether he inflicted, attempted to inflict, or threatened to inflict physical harm on Ms. Engle. In support, he asserts that appellee presented no evidence that he attacked or threatened to attack Ms. Engle, and that Ms. Engle testified that she did not feel threatened but, instead, merely stated that she was in shock. We find these arguments unpersuasive. *Page 11 
 {¶ 46} As we have indicated in response to appellant's third assignment of error, Ms. Engle testified that when she made her presence known at the time of the robbery, appellant exclaimed, "Oh shit." He then covered his face with his jacket, walked up to Ms. Engle, struck her in the face, held her down on the floor, and then relayed instruction from her to Byrd regarding how to get into the cash register. Thus, appellee presented ample evidence that appellant inflicted physical harm on Ms. Engle.
 {¶ 47} Appellant also contends that Ms. Engle was not able to describe the motion by which appellant struck her. We find this contention unpersuasive. The trial court characterized Ms. Engle's testimony regarding how appellant hit her in the face, as follows:
 {¶ 48} "Then there's the discrepancy [between appellant's and Ms. Engle's testimony] where she said that he struck her and she describes with specificity the kind of unique way that [appellant's] hand was held when he hit her. It was not a fist, and it was not a slap, but kind of a — almost like a karate chop type of look, but a palming of the side of her face."
 {¶ 49} The trial court essentially found that appellant "cuffed"[2]
Ms. Engle when he struck her. Ms. Engle's testimony supports that finding. Additionally, Ms. Engle's testimony supports a finding that appellant inflicted physical harm on her when he cuffed or struck her. The phrase, "physical harm to a person," is defined as meaning "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 50} In this case, Ms. Engle testified that when appellant struck her on the face, she was shocked, but it did not hurt at that time. However, she testified that her face *Page 12 
"hurt the next day after [she] got up." When she was asked to specify "what type of hurt," she said, "Kind of like a bruised feeling." When she was asked earlier what injuries she had sustained as a result of the robbery, she answered, "I just had a sore face." Pursuant to R.C.2901.01(A)(3), the injuries Ms. Engle sustained as a result of being cuffed or struck by appellant were sufficient to constitute "physical harm," for purposes of R.C. 2911.02(A)(2).
 {¶ 51} Given the foregoing, we conclude that when the evidence is viewed in a light most favorable to the prosecution as it must be in evaluating a challenge to the sufficiency of the evidence,McKnight, 107 Ohio St.3d at 112, it is apparent that appellee presented ample evidence to prove each of the material elements of robbery in violation of R.C. 2911.02(A)(2), including the element of inflicting, attempting to inflict, or threatening to inflict physical harm on another.
 {¶ 52} Appellant also argues that "the evidence weighed heavily in favor of acquittal." However, having reviewed the evidence, we have come to the opposite conclusion. Throughout the proceedings, appellant relied primarily on his assertion that he did not hit Ms. Engle. He repeated this assertion on numerous occasions. Indeed, at one point during his testimony he stated that if he had hit her, he would have not taken the matter to trial, but, instead, would have taken appellee's offer of two years in prison.
 {¶ 53} However, the trial court, acting in its role as the trier-of-fact in this case, was in the best position to determine the credibility of appellant and Ms. Engle and, therefore, was entitled to believe Ms. Engle's testimony and disbelieve appellant's.Nichols, 85 Ohio App.3d at 76. See Nichols, 85 Ohio App.3d at 76. Additionally, Ms. Engle was not shown to have had any reason to lie about appellant's actions, and appellant himself was unable to offer any explanation as to why Ms. Engle would lie *Page 13 
about the events of that evening.
 {¶ 54} Consequently, we conclude that appellant's conviction for robbery in violation of R.C. 2911.02(A)(2) was supported by sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 55} Appellant's first and second assignments of error are overruled.
 {¶ 56} Assignment of Error No. 4:
 {¶ 57} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 58} Appellant argues that his defense counsel failed to provide him with constitutionally effective assistance of counsel because his counsel (1) allowed him to waive his right to a jury trial and (2) failed to call the trier-of-fact's attention to the inconsistencies that existed between Ms. Engle's testimony at the preliminary hearing and her testimony at trial. We disagree with this argument.
 {¶ 59} In order to prevail on an ineffective assistance of counsel claim, a criminal defendant must make the two-pronged showing set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, a defendant must show that his counsel's performance was deficient. Id. at 687. This requires showing that his counsel's performance "fell below an objective standard of reasonableness." Id. at 687-688. Judicial review of counsel's performance must be "highly deferential," and a reviewing court must indulge a strong presumption that counsel's conduct is professionally reasonable and, under the circumstances, might be considered sound trial strategy. Id. at 689.
 {¶ 60} Second, a defendant must show that his defense counsel's deficient performance prejudiced him. Id. at 687. This requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the *Page 14 
proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A failure to make a sufficient showing on either the "performance" or "prejudice" prong of the Strickland standard will doom a defendant's ineffective assistance of counsel claim. See id. at 697.
 {¶ 61} First, appellant argues that his trial counsel erred by allowing him to waive his right to a jury trial after the trial court reminded appellant about a letter that he had sent to the court earlier in the proceedings, which contained language that was arguably incriminating. That letter, which was addressed to the trial judge, stated in pertinent part:
 {¶ 62} "Sir I'm charged with Robbery 2nd degree. I was involved in a stupid crime. I don't deny [sic]. The only part of this crime I do deny is hitting the girl. At the risk of not [sic] sounding like I'm minimizing the seriousness of what happened [,] Judge I would like to state a couple of things. The girl who says I hit her had no injuries at all[,] no bruises[,] swelling their [sic] was nothing taken, still honor [sic] I know what I did was very wrong and stupid[.] I had no right I have no excuse for what I did. Plain simple I was wrong[.] I wish I could take it back! I'm sorry! I know the victim and again I'm very sorry!"
 {¶ 63} When appellant informed the trial court that he wished to waive his right to a jury trial on the robbery charge and to be tried, instead, by the bench, the trial court made the following comments to appellant:
 {¶ 64} "Before I go forward, Mr. Adams, I do want to discuss one matter with you. At some point, * * * I did receive a letter from you [that contained] some language that could possibly, depending on how it was interpreted, be incriminating. *Page 15 
 {¶ 65} "* * * I understand this is not evidence, and I will do my utter best to put this out of my mind and just listen to the facts in front of me, but I do want you to understand that there's a human factor that's involved also. And you have to, like I said, I'll do may best to put it out of mind, but you do need to remember that you did send this to me, and I opened it up and read it some while back. So I just want to make sure that you understand that, and that you take that into consideration also in determining whether you want to waive that jury.
 {¶ 66} "And I think it's only fair that I remind you of that, so that you understand that although I am going to base my decision based on the evidence that I hear in this courtroom, from the witness stand, and the documents that have been provided to me, that there has been some contact made with me by yourself earlier, and I just want you to remember that."
 {¶ 67} "THE DEFENDANT [i.e., appellant]: Yes.
 {¶ 68} "THE COURT: And now knowing that, is it still your desire to have me hear the case?
 {¶ 69} "THE DEFENDANT: Yes, sir."
 {¶ 70} The trial court accepted appellant's waiver of his right to a jury trial after finding that his waiver was knowingly, intelligently, and voluntarily made.
 {¶ 71} Appellant now argues that it was error for his defense counsel to allow him to waive his right to a jury trial in light of the trial court's comments. We disagree with this argument.
 {¶ 72} The record shows that appellant's defense counsel discussed with appellant whether or not he wanted to go forward with a jury trial or a bench trial. Defense counsel informed the trial court that appellant wanted to be tried by the bench, *Page 16 
and appellant himself confirmed this fact when questioned by the trial court.
 {¶ 73} As stated in Strickland, judicial review of counsel's performance must be "highly deferential" and a reviewing court must indulge a strong presumption that counsel's conduct is professionally reasonable and that under the circumstances, counsel's conduct might be considered sound trial strategy. Id., 466 U.S. at 689.
 {¶ 74} In this case, defense counsel's decision to allow appellant to waive his right to a jury trial even after the trial court made the comments mentioned above is entitled to a strong presumption that counsel's decision was professionally reasonable, and that under the circumstances of this case, might be considered sound trial strategy. First, it is appears that in allowing appellant to waive his right to a jury trial, defense counsel was acceding to appellant's wishes to be tried by the bench and not by a jury. Ultimately, the decision whether or not to waive his right to a jury trial rested with appellant.
 {¶ 75} Second, while many attorneys may view appellant's request to waive his right to a jury trial as unwise, appellant's desire to be tried by the bench rather than a jury cannot be viewed as irrational, and defense counsel's decision to allow him to do so cannot be deemed as objectively unreasonable conduct on counsel's part. Throughout these proceedings, appellant essentially conceded the wrongness of his actions on the night of the attempted robbery.
 {¶ 76} However, he consistently held firm on his assertion that he did not hit Ms. Engle. Appellant appears to have believed that he could convince the trial judge of the truth of that assertion, and defense counsel may have reasonably concluded that it was possible for him to do so. In any event, defense counsel would have been in no position to force appellant to be tried by a jury rather than the bench. *Page 17 
 {¶ 77} Furthermore, it does not appear to us that appellant could prevail on the prejudice prong of the Strickland standard with respect to this issue. In particular, we note there is nothing in the record to show that appellant would have retracted his waiver of his right to a jury trial if his defense counsel had attempted to advise him to do so after the trial court made the comments it did about the letter appellant sent to the trial judge earlier in the proceedings.
 {¶ 78} Appellant's remaining argument under this assignment of error involves his claim that his defense counsel provided him with ineffective assistance of counsel by not pointing out the inconsistencies between Ms. Engle's testimony at the preliminary hearing and her testimony at trial. Specifically, appellant asserts that Ms. Engle testified at the preliminary hearing that she had seen him in the store on prior occasions and recognized him, but at the trial, Ms. Engle said she did not know him. Appellant also contends that at the preliminary hearing, Ms. Engle said appellant hit her with a closed fist on the right side of her face, but that at trial, she testified that appellant hit her on the left side of the face, but not with a closed fist.
 {¶ 79} In support of this argument, appellant has attached to his appellate brief a copy of the preliminary hearing transcript. However, as appellee points out, the transcript of the preliminary hearing is not properly before this court since appellant failed to transmit this part of the record within 40 days of the filing of his notice of appeal. See App.R. 10(A) (record on appeal, including transcript and exhibits necessary for determination of appeal must be transmitted to the clerk of the court of appeals when the record is complete for purposes of appeal, or when 40 days have elapsed after notice of appeals is filed and no order extending time has been granted).
 {¶ 80} Even if the transcript of the preliminary hearing was properly before us, it *Page 18 
would not change the result since the inconsistencies between Ms. Engle's preliminary hearing testimony and her trial testimony were minor, at best. For example, at the preliminary hearing, Ms. Engle testified that she had seen appellant in the store before, but at trial, she testified that she was "not sure if she had seen him before[,]" adding that she "may have" seen him before, but she "did not remember seeing him." This is understandable given the amount of time between the attempted robbery, which occurred on December 16, 2005, and the trial, which was held on May 15, 2006. By contrast, the preliminary hearing was held on December 27, 2005.
 {¶ 81} Also at the preliminary hearing, Ms. Engle indicated that she was hit on the right side of her face, but at trial, she testified that she was hit on the left side of her face. However, this minor inconsistency can also be explained by the length of time between the date of the robbery and the date of the trial.
 {¶ 82} Finally, appellant argues that Ms. Engle testified at the preliminary hearing that she was hit with a closed fist during the attempted robbery, but at the trial, she testified that she was not hit with a closed fist. We find this argument unpersuasive.
 {¶ 83} At the preliminary hearing the following exchange took place between appellee and Ms. Engle:
 {¶ 84} "Q. Did he hit you with a closed fist?
 {¶ 85} "A. It wasn't a like a fist like that — it was like * * *
 {¶ 86} "Q. (unintelligible)
 {¶ 87} "A. No, he hit me like that.
 {¶ 88} "Q. But his fingers were closed in his fist?
 {¶ 89} "A. Yeah."
 {¶ 90} As can be seen, the exchange between appellee and Ms. Engle suffers *Page 19 
from the fact that it cannot be seen, but, instead, can only be understood from the words that were transcribed at the preliminary hearing. However, a careful reading of this portion of the preliminary hearing transcript shows that what Ms. Engle appeared to be trying to describe was that appellant had cuffed her with the palm of his hand, as the trial court found at the close of evidence at the trial. Therefore, pointing out this alleged inconsistency to the trier-of-fact in this case would not have changed the outcome of these proceedings.
 {¶ 91} In light of the foregoing, we conclude that appellant has failed to show that his defense counsel provided him with constitutionally ineffective assistance of counsel at trial.
 {¶ 92} Appellant's fourth assignment of error is overruled.
 {¶ 93} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] The charge of illegal use or possession of drug paraphernalia arose from the fact that during appellant's booking, Officer Kirsch saw a crack pipe fall out of appellant's pants' pocket.
[2] The term "cuff means "to strike with the palm of the hand or in a manner suggesting such a blow." Webster's Third New Internatl. Dictionary (1993) 551. *Page 1