**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0836n.06
**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 30, 2009**

LEONARD GREEN, Clerk

CHRISTOPHER BROWN, )
)
    Petitioner-Appellant, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR
)  THE SOUTHERN DISTRICT OF
MICHAEL SHEETS, Warden, )  OHIO
)
    Respondent-Appellee, )

Before: SILER, GILMAN, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Christopher Brown is an Ohio state prisoner who petitioned for a writ

of habeas corpus, under 28 U.S.C. § 2254, challenging his conviction based on various charges of

sexual misconduct with minors. The district court denied his petition and certified one issue for

appeal—whether Brown was denied effective assistance of counsel. We **AFFIRM**.

## I. BACKGROUND

**A. Facts Underlying Brown's Conviction**

### 1. Indictments

Brown was indicted in 2004 for six counts of gross sexual imposition and one count of rape,

based on allegations made by his twelve-year-old niece K.H. Later, he was indicted in a separate

case for eighteen counts based on allegations by his seventeen-year-old sister-in-law L.H. That

indictment included the following counts: six counts of gross sexual imposition with a victim under

age thirteen (Count 13-18); three counts of gross sexual imposition by force (Counts 1, 5, and 9); three counts of unlawful sexual conduct with a minor (Counts 2, 6, and 10); three counts of sexual battery (Counts 3, 7, and 11); and three counts of rape (Counts 4, 8, and 12). The trial court consolidated the indictments for trial.

### 2. Trial Testimony

Sixteen witnesses, including K.H. and L.H., testified at trial. L.H. testified that Brown touched her breasts on several different occasions when he was living in her father's house. K.H. testified that Brown molested her on three or four occasions. During each instance, Brown touched her in the "bra area," beneath her bra, and touched her "in between the legs" twice. In addition to this testimony, the State called several family members and investigators to testify.

Dr. Jeff Smalldon, a board-certified forensic pathologist, testified on Brown's behalf. He provided expert testimony that the interview procedures used on L.H. were tainted. Although he could not conclude that her testimony was fabricated, he explained to the jury that the techniques were suggestive. Defense counsel also called additional witnesses, including Clyde Haller, L.H.'s father and K.H.'s grandfather.

## B. Procedural Background

### 1. Trial Court Proceedings

The court granted defense counsel's motion for the prosecution to make both alleged victims available for pretrial interviews. Defense counsel interviewed K.H., asking approximately ten questions. He declined to interview L.H.. After voir dire, the court allowed the prosecutor to amend the indictment over Brown's objections. Subsequently, defense counsel requested a continuance so

he could prepare a defense based on the amended indictment, which the trial court denied. Additionally, the trial court granted Brown's motion for judgment of acquittal as to five counts. It dismissed Counts 4, 6, and 7 of the indictment in K.H.'s case and Counts 17 and 18 of the indictment in L.H.'s case. The jury found Brown guilty of Counts 1, 2, 3, and 5 of K.H.'s case and Counts 1, 2, 4, 5, 9, 10, 12, 13, 14, 15, and 16 of L.H.'s case. After the jury announced its verdict, Brown made a renewed motion for judgment of acquittal and moved for a new trial. Based on Brown's motions, the trial court released L.H.'s and K.H.'s grand jury transcripts, to determine whether there was any variance between trial testimony and the evidence presented to the grand jury. The trial court dismissed Count 9 in L.H.'s case, because it was not the same incident described to the grand jury, and denied Brown's motion for a new trial. Brown was sentenced to an aggregate term of 12 years.

### 2. Direct Appeal Proceedings

Brown timely appealed his conviction and raised six assignments of error, including ineffective assistance of counsel. The Ohio Court of Appeals affirmed his conviction in 2005. The Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

### 3. Federal Habeas Proceedings

Brown petitioned for a writ of habeas corpus in 2006 in the United States District Court for the Southern District of Ohio. The magistrate judge issued a Report and Recommendation, concluding that Brown's petition should be dismissed. In 2007, the district court issued an Opinion

and Order adopting the magistrate judge's recommendations. Brown filed a notice of appeal, and

the district court granted a certificate of appealability on one issue:

> Was petitioner denied the effective assistance of trial counsel due to his attorney's failure to conduct reasonable investigation by inadequately interviewing alleged victim K.H. Haller and failing to interview alleged victim L.H. Haller, failing to file a pre-trial motion to dismiss L.H. Haller's statement as flawed or tainted, failing to object to inadmissible evidence, failing to conduct adequate cross[-]examination, and erroneously calling Clyde Haller as a defense witness?

## II. STANDARD OF REVIEW

Our review of Brown's petition for a writ of habeas corpus is governed by the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Under AEDPA, we may not grant a petition for writ of habeas corpus unless the state court

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d).

The district court applied the standards set forth under AEDPA and concluded that Brown

was not entitled to relief. We review de novo a district court's conclusions regarding a habeas

petitioner's ineffective-assistance-of-counsel claim. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir.

2006).

## III. DISCUSSION

The Supreme Court has established the following two-prong test to determine whether

counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## A. "Contrary to" Clearly Established Federal Law

In rejecting Brown's ineffective-assistance-of-counsel claim, the Ohio Court of Appeals applied the correct standard under *Strickland*. Although the state appellate court included one citation to *Lockhart v. Fretwell*, 506 U.S. 364 (1993)—which did not modify *Strickland*, *see Williams v. Taylor*, 529 U.S. 362, 391 (2000)—it applied *Strickland*'s prejudice standard. In particular, in evaluating prejudice, it considered whether "there exist[ed] a reasonable probability that, had counsel [not been deficient], the result of his case would have been different." *State v. Brown*, No. 2005CAA01002, 2005 WL 2727129, at \*17 (Ohio Ct. App. Oct. 20, 2005). This is precisely the same prejudice standard that *Strickland* requires. *See Strickland*, 466 U.S. at 694. Accordingly, we conclude that the state appellate court did not apply law that was "contrary to" clearly established federal law.

## B. "Unreasonable Application of" Federal Law

Under *Strickland*'s deficiency prong, Brown must show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial

strategy." *Id.* at 689. Under the prejudice prong, Brown must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different." *Id.* at 694.

Brown argues that his trial counsel's performance was deficient in four ways: (1) he failed to interview the victims adequately; (2) he failed to file a motion to exclude L.H.'s testimony as the result of tainted procedures; (3) he failed to object to hearsay statements; and (4) he failed to properly impeach K.H..[1] Brown's claim fails with respect to each of those grounds because the state appellate court was not unreasonable in its conclusion that, even if counsel's conduct was deficient, Brown failed to show prejudice.

First, even if trial counsel's failure to interview L.H. and more adequately question K.H. demonstrates deficient performance, *see, e.g.*, *Landers v. Rees*, 782 F.2d 1042, at *4 (6th Cir. 1985) (table) (explaining that a failure to interview the victim may be deficient), Brown did not present any facts that would have been discovered during those interviews that could have been used to impeach the victims during cross-examination, *Elswick v. Parke*, 861 F.2d 720, at *3-4 (6th Cir. 1988) (table) (rejecting defendant's ineffective-assistance-of-counsel claim because he could not show any facts that could have been used for impeachment, which facts would have been uncovered had trial counsel interviewed the victim before trial). Brown speculates that, "[g]iven the complainants' failures to repeat the same story twice, defense counsel, by interviewing them could have most likely

---

[1]Although he originally argued five grounds for ineffective assistance, Brown conceded at oral argument that he could not succeed on one of those grounds—trial counsel's decision to call Clyde Haller.

obtained yet a different version of the events." This attempt at showing prejudice is too speculative. He does not point to specific facts that, had they been discovered, would have had a reasonable probability of affecting the outcome.

Similarly, Brown has not shown how he was prejudiced by trial counsel's failure to move to exclude L.H.'s statements. To succeed on this argument, he would have to show that there was a reasonable probability that the district court would have granted that motion and that the outcome would have been different without the evidence. *Strickland*, 466 U.S. at 694. Brown argues that to succeed on such a motion, he needed to prove only that investigators used methods that raise doubt as to the reliability of the testimony, not that the testimony was fabricated. The cases on which he relies, however, are not relevant to determining whether or not to exclude witness testimony based on allegedly improper interview techniques. Instead, those cases address whether statements by children about alleged sexual assault made to medical personnel should be admitted under Ohio's hearsay exception for statements made in the course of medical diagnosis. *E.g.*, *Ohio v. Dever*, 596 N.E.2d 436, 444 (Ohio 1992) (explaining the factors that courts should consider in determining whether a child's statement regarding sexual assault should be admitted pursuant to Ohio Evid. R. 803(4)). Because Brown has not presented a basis upon which the trial court would have granted a motion to exclude the testimony, he has not shown that the state appellate court was unreasonable in its conclusion that he could not show prejudice.

Brown also contends that counsel's failure to object to certain testimony as hearsay constitutes ineffective assistance of counsel.[2] The state appellate court rejected Brown's claim for various reasons, including the fact that he did not set forth the precise statements at issue, and because the court concluded that any error was simply harmless error. Brown has failed to show that the state court's conclusion was unreasonable. First, the statements to which he objects would likely have been admissible as non-hearsay statements. For example, some of the statements would have likely been admitted under Ohio Evidence Rule 801(D)(1)(b), which excludes from the definition of hearsay prior consistent statements offered to rebut charges of recent fabrication or improper influence or motive. *See State v. Nichols*, 619 N.E.2d 80, 84 (Ohio Ct. App. 1993) ("The courts in Ohio have generally interpreted this rule as including only those prior consistent statements which were made . . . *before* the existence of any motive to falsify testimony."). Brown argued that L.H.'s testimony was influenced by suggestive interview techniques used by the investigating officers. Most of the testimony about which he complains could be classified as prior consistent statements offered to rebut his argument that L.H.'s testimony was unduly influenced by the interviews. The additional statements to which he objects were actually consistent with his theory of the case: that K.H. and L.H. were influenced by the conversations they had with family members, each other, and investigators. The questions that led to the objectionable statements were necessary to rebut Brown's argument that family members and investigators used suggestive techniques. To the extent

---

[2]We cannot accept the Warden's argument that Brown forfeited this claim by failing to raise it in his petition before the district court. Although Brown's petition focused on the Confrontation Clause—an issue which he has not raised on appeal—it cited Ohio's hearsay rule and case law applying that rule. Accordingly he has not forfeited this claim.

that any of the remaining statements were actually inadmissible hearsay, they were cumulative given the other admissible statements. Accordingly, Brown was not prejudiced by counsel's failure to object to the statements at issue.

Finally, Brown argues that his trial counsel was ineffective because he did not use Detective Penrod's report or the first amended bill of particulars to impeach K.H. and because he did not renew his request for a copy of the grand jury testimony, which could have also been used for impeachment. The state appellate court's conclusion that Brown was not prejudiced by this failure was not an unreasonable application of federal law. Although there were inconsistencies between K.H.'s testimony and the report, first amended bill of particulars, and grand jury testimony, trial counsel explored the inconsistencies between K.H.'s and L.H.'s trial testimony and other prior statements. Although counsel emphasized numerous inconsistencies in their testimony, the jury still believed K.H. and L.H.. It is doubtful that further impeachment would have altered the outcome—in fact, given the age of the witnesses, trial counsel may very well have made a tactical decision not to further impeach them, so as not to negatively impact the jury's perception of him. Thus, the state court did not unreasonably apply federal law in concluding that this ground did not give rise to a successful ineffective-assistance-of-counsel claim.

**AFFIRMED.**